UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON WHITE,<br><br>               Plaintiff,<br><br>v.<br><br>THE NEW SCHOOL,<br><br>               Defendant. | Case No: 1:25-cv-02910-ALC<br><br><br>Hon. Andrew L. Carter, Jr. |

## DEFENDANT THE NEW SCHOOL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

TROUTMAN PEPPER LOCKE LLP
Michael E. Baughman
3000 Two Logan Square, Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4964
Email: michael.baughman@troutman.com

*Counsel for Defendant The New School*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT ALLEGATIONS IN THE COMPLAINT ..................................................... 2

ARGUMENT ....................................................................................................................... 7

I.      Legal Standard. ....................................................................................................... 7

II.     Plaintiff Fails To State A Hostile Environment Claim Under Title VI (Count I) ................ 8

        A.      TNS Could Not Have Discriminated Against Plaintiff Since He Is Not
                Jewish. ........................................................................................................... 9
        B.      Plaintiff Has Not Alleged That TNS Subjected Him To Discrimination. ............. 13
        C.      TNS' Actions Were Not Deliberately Indifferent. ................................................. 14

III.    Plaintiff Fails To Allege A Disparate Treatment Claim Under Title VI (Count II). ......... 16

IV.     The State Law Claims Should Also Be Dismissed. ............................................... 17

        A.      Plaintiff Fails To State A Claim Under The NYSHRL, NYCRL And
                NYCHRL (Counts III–VIII). ..................................................................... 18
        B.      Plaintiff Fails To State A Claim For Breach Of Contract (Count IX). ................ 19

V.      Plaintiff's Complaint Is In Violation Of Rule 8. .................................................. 20

CONCLUSION .................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
   532 U.S. 275 (2001)......................................................................................................8, 11

*Anderson v. City of New York,*
   712 F.Supp.3d 412 (S.D.N.Y. 2024)....................................................................18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................7

*Barnes v. Gorman,*
   536 U.S. 181 (2002)..................................................................................................8

*Butler v. Potter,*
   345 F.Supp.2d 844 (E.D. Tenn. 2004)..................................................................11

*Chandrapaul v. City Univ. of N.Y.,*
   No. 14 Civ. 790 (AMD) (CLP), 2016 WL 1611468 (E.D.N.Y. Apr. 20, 2016).....................10

*Chao v. 979 Second Ave. LLC,*
   No. 25-cv-00778 (ALC), 2025 WL 1224191 (S.D.N.Y. Apr. 24, 2025)....................11, 17, 20

*Curto v. Edmundson,*
   392 F.3d 502 (2d Cir. 2004)....................................................................................8

*Davis v. Monroe Cnty. Bd. of Educ.,*
   526 U.S. 629 (1999).......................................................................................... *passim*

*Diaz v. City Univ. of N.Y.,*
   No. 15-CV-1319, 2015 WL 13746673 (S.D.N.Y. Nov. 16, 2015).........................12

*Doe v. Hobart & William Smith Colls.,*
   546 F. Supp.3d 250 (W.D.N.Y. 2021)....................................................................20

*Doe v. Hobart & William Smith Colls.,*
   No. 6:17-cv-6762, 2021 WL 751272 (W.D.N.Y. Jan. 25, 2021) ...........................15

*Doe v. New York Univ.,*
   438 F.Supp. 3d 172 (S.D.N.Y. 2020).....................................................................17

*Doe v. Skidmore Coll.,*
   152 A.D.3d 932 (3d Dep't 2017)............................................................................20

*Doherty v. Bice*,
    101 F.4th 169 (2d Cir. 2024) ..................................................................11

*DT v. Somers Cent. Sch. Dist.*,
    588 F. Supp. 2d 485 (S.D.N.Y. 2008), *aff'd*, 348 F. App'x 697 (2d Cir. 2009)....................13

*Preusser ex rel. E.P. v. Taconic Hills Cent. Sch. Dist.*,
    No. 110–CV–1347, 2013 WL 209470 (N.D.N.Y. Jan. 17, 2013) ..........................16

*Elgamil v. Syracuse Univ.*,
    No. 99-CV-611, 2000 WL 1264122 (N.D.N.Y. Aug. 22, 2000) .............................13

*Ellis v. Univ. of Rochester*,
    No. 19-CV-6380 CJS, 2024 WL 493504 (W.D.N.Y. Feb. 8, 2024)........................14

*Evans v. Columbia Univ.*,
    No. 14-CV-2658 (NSR), 2015 WL 1730097 (S.D.N.Y. Apr. 13, 2015) ...............................19

*Farmer v. Shake Shack Enters., LLC*,
    473 F. Supp. 3d 309 (S.D.N.Y. 2020).....................................................18

*Fraad-Wolff v. Vassar Coll.*,
    932 F. Supp. 88 (S.D.N.Y. 1996) ............................................................19

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*,
    765 F. Supp.3d 245 (S.D.N.Y. 2025)......................................................10

*Gebser v. Largo Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998)........................................................8, 9, 11, 13

*Johnson v. Nat'l Football League Players Ass'n*,
    No. 17-cv-5131 (RJS), 2018 WL 8188558 (S.D.N.Y. Oct. 3, 2018), *aff'd*, 820
    F. App'x 51 (2d Cir. 2020) ........................................................8, 16

*Kajoshaj v. N.Y.C. Dep't of Educ.*,
    543 F. App'x 11 (2d Cir. 2013) ..............................................................12

*Karasek v. Regents of the Univ. of Cal.*,
    956 F.3d 1093 (9th Cir. 2020) ..............................................................15

*Kaye v. N.Y.C. Health & Hosps. Corp.*,
    No. 18-cv-12137, 2023 WL 2745556 (S.D.N.Y. Mar. 31, 2023)..........................18

*KF v. Monroe Woodbury Centr. Sch. Dist.*,
    No. 12-CV-2200, 2012 WL 1521060 (S.D.N.Y. Apr. 30, 2012), *aff'd*, 531 F.
    App'x 132 (2d Cir. 2013)..............................................................13

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
    944 F.3d 613 (6th Cir. 2019) ...................................................................................8, 11, 13

*Lewis v. North Gen. Hosp.*,
    502 F.Supp.2d 390 (S.D.N.Y. 2007)....................................................................................11

*Mandell v. Cnty. of Suffolk*,
    316 F.3d 368 (2d Cir. 2003)................................................................................................16

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) ...........................................................................................21

*Nungesser v. Columbia Univ.*,
    244 F. Supp.3d 345 (S.D.N.Y. 2017)...................................................................................17

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981).................................................................................................................11

*Pierre v. Univ. of Dayton*,
    No. 3:15-cv-362, 2017 WL 1134510 (S.D. Ohio Mar. 27, 2017) ...........................................19

*Posso v. Niagara Univ.*,
    No. 19-CV-1293-LJV-MJR, 2020 WL 8771334 (Nov. 2, 2020 W.D.N.Y.),
    *report and recommendation adopted in part, denied in part and deferred in
    part*, 518 F.Supp.3d 688 (W.D.N.Y. 2021) ...........................................................................13

*Red Rock Sourcing LLC v. JGX LLC*,
    No. 21 Civ. 1054 (JPC), 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) .................................7

*Roenick v. Flood*,
    No. 20 Civ. 7213 (JPC), 2021 WL 2355108 (S.D.N.Y. June 9, 2021)...................................18

*Rolph v. Hobart & William Smith Colls.*,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017) .................................................................................19

*Romero v. St. Vincent's Servs.*,
    No. 19-CV-7282(KAM)(ST), 2022 WL 2079648 (E.D.N.Y. June 10, 2022)..................11, 18

*Russo v. New York Presbyterian Hosp.*,
    972 F. Supp. 2d 429 (E.D.N.Y. 2013) .................................................................................18

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988)...................................................................................................21

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)...............................................................................................................7

*Smith v. Local 819 Pension Plan,*
    291 F.3d 236 (2d Cir. 2002)....................................................................................7

*Strunk v. U.S. House of Representatives,*
    68 F. App'x 233 (2d Cir. 2003) .............................................................................21

*T.C. v. Valley Cent. Sch. Dist.,*
    777 F.Supp.2d 577 (S.D.N.Y. 2011).....................................................................16

*Tubbs v. Stony Brook Univ.,*
    343 F. Supp. 3d 292 (S.D.N.Y. 2018)..............................................................9, 15

*Uddin v. Universal Avionics Sys. Corp.,*
    No. 05 Civ. 1115(TWT), 2006 WL 1835291 (N.D. Ga. June 30, 2006)...............11

*Ward v. New York Univ.,*
    No. 99 CIV. 8733(RCC), 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) .............20

*Zeno v. Pine Plains Cent. Sch. Dist.,*
    702 F.3d 655 (2d Cir.2012)....................................................................10, 15, 16

**Statutes**

28 U.S.C. § 1367.......................................................................................................17

42 U.S.C. § 2000d...................................................................................................8, 9

Fed. R. Civ. P. 8(d) ...................................................................................................20

Fed. R. Civ. P. 12(b)(6)...............................................................................................7

Fed. R. Civ. P. 12(f)..................................................................................................20

N.Y.C. Admin. Code § 8-101 *et seq.* ........................................................................18

N.Y. Civ. Rights L. § 40 *et seq.* ...............................................................................18

N.Y. Exec. L. § 296 *et seq.* ......................................................................................18

**Other Authorities**

*Student Code of Conduct*, The New School, https://app.getguru.com/card/Tr9A7A5c/Student-

    Code-of-Conduct (last visited July 18, 2025). .........................................................2

*Zionism*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/Zionism#dictionaryentry-1 (last visited July 18, 2025). ............. 3, 11

## PRELIMINARY STATEMENT

Plaintiff Brandon White ("Plaintiff") was a student at The New School ("TNS") in October 2023 when TNS' campus – like many throughout the country – was beset by campus protests relating to the events in Palestine.  Plaintiff claims that these protests created a hostile environment for Jewish students, in violation of Title VI of the Civil Rights Act.  Plaintiff, however, is not Jewish.  Nor is he of Israeli descent.  TNS could not have discriminated against Plaintiff based on his Jewish ancestry when he is not, in fact, Jewish.

Seeking to avoid this result, Plaintiff claims that certain pro-Palestine protesters discriminated against him based on the "perception" that he is Jewish.  Plaintiff claims he was blocked from entering a student building by pro-Palestine protesters who called him a "Zionist" and shoved him during the encounter.  The protesters, by contrast, claim that Plaintiff was the aggressor and that he used homophobic slurs, such as "faggot" and "tranny" while trying to punch them.  The protesters posted their concerns on social media and filed a Title IX complaint against Plaintiff with TNS.  Plaintiff then pursued his own complaint against the protesters.  Months later, Plaintiff reframed his allegations by claiming that his Title VI rights were violated because the protesters "perceived" him to be Jewish, since they called him a "Zionist."

But calling someone a "Zionist" means that they support Israel, not that they are Jewish or that they are from Israel.  Thus, it is far from clear that these protesters believed Plaintiff to be Jewish, as opposed to someone who did not share their political views.  And, even if these protesters perceived Plaintiff to be Jewish, TNS did not.  Indeed, Plaintiff specifically told the school that he is *not* Jewish.  Title VI does not provide a claim based on "perceived" Jewish identity at all, and it certainly does not provide a claim against TNS where it is undisputed that TNS did not perceive Plaintiff to be Jewish.

Plaintiff's Title VI claims fail for other reasons too, including that he cannot show that any actions by TNS caused him to suffer discriminatory harassment and TNS' decision to hold the students accountable through an educational intervention, consistent with its student development mission and institutional policies,[1] does not approach the standard of "deliberate indifference" necessary to support a Title VI claim. The Court should not entertain jurisdiction over the remaining state law claims and, even if it did, they are baseless too.

Taking the concerns Plaintiff raised to TNS as true (as opposed to an effort to blunt the force of the complaint that had been filed against him), he may well have been frustrated and annoyed by the actions of these protesters. And their message and tactics may have been deeply offensive and hurtful to the Jewish community (which TNS took appropriate action to address). But Plaintiff's national origin has nothing to do with this. Plaintiff cannot claim discrimination based on a Jewish ancestry which he does not have. His complaint should be dismissed.

## RELEVANT ALLEGATIONS IN THE COMPLAINT

Following the attacks perpetrated by Hamas in Israel on October 7, 2023, college campuses across the country erupted with protests, fueled primarily by those opposing Israel's military response and the political situation in Palestine. ECF No. 1 ("Compl.") ¶¶ 16, 19. TNS was one of those campuses. Plaintiff, a TNS student at the time, claims that the protests and caustic rhetoric associated with them "created a hostile environment for Jews and Israelis at TNS . . . ." *Id.* ¶ 4; *see also id.* ¶ 36. Nowhere, however, does Plaintiff claim that this general campus activism created a hostile environment **as to him**, because he is neither Israeli nor Jewish. *Id.* ¶¶ 5, 37.

---

[1] *Student Code of Conduct*, The New School, https://app.getguru.com/card/Tr9A7A5c/Student-Code-of-Conduct (last visited July 18, 2025) ("Sanction[s] are not intended to be solely punitive, as such they are issued with the educational philosophy of encouraging reflection on one's decisions and the impact on self, others, and community as well as the importance of continued education in and out of the classroom. Sanctions are determined with the seriousness of the conduct, corrective and learning opportunities of the student, prior conduct of the individual, as well as striving for consistency between other similar cases." ).

Plaintiff nonetheless suggests that he was subjected to a hostile environment based on specific interactions with members of the group Students for Justice in Palestine ("SJP").  *Id.*  On December 4, 2023, Plaintiff tried to access TNS' University Center when he ran into a protest by SJP.  *Id.* ¶ 38.  Plaintiff was stopped by SD (president of SJP), VS (a teaching assistant) and other protesters, who yelled at him and shoved him back.  *Id.* ¶¶ 42–45.  Plaintiff claims that SD allegedly confronted Plaintiff while yelling and swinging his arm near Plaintiff's face.  *Id.* ¶ 46.  Plaintiff alleges that SD then forcefully thrust his arm into Plaintiff and SD shouted at Plaintiff that he was a "Zio," short for Zionist.  *Id.*  Based on their use of this term, Plaintiff claims that "although [he] is not Jewish or Israeli, protest[e]rs targeted him with antisemitic, anti-Israeli harassment based on their perception that he is."  *Id.* ¶ 37.  Other than the protesters' use of the term "Zionist" to describe Plaintiff – which is defined by Merriam-Webster as "an international movement originally for the establishment of a Jewish national or religious community in Palestine and later for the support of modern Israel"[2] – the Complaint offers no other facts suggesting that ***anyone*** thought Plaintiff was Jewish or Israeli.

The protesters had a very different interpretation of the events of December 4th.  According to the Complaint, immediately after the protest, SD made a social media posting claiming that Plaintiff "punched me in the face and called me a faggot during today's actions and I would like to press charges . . .."  *Id.* ¶ 53.  Plaintiff claims that SD and others made additional posts in the ensuing days, claiming that Plaintiff had assaulted SD and made homophobic slurs, including asking people to identify Plaintiff and report him to the school.  *Id.* ¶ 56.  SD and VS also promptly filed a Title IX complaint with TNS' Title IX office alleging that Plaintiff had assaulted them,

---

[2] *Zionism*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/Zionism#dictionaryentry-1 (last visited July 18, 2025).

called them "faggots", called another student a "tranny" and told a student to "kill himself" and that he should "die in Gaza."  Compl. ¶ 67; Ex. C.

Meanwhile, on the evening of December 4, 2023, Plaintiff alleges that he emailed TNS' President, Provost, and other administrators complaining about the protests.  *Id*. ¶¶ 59–60.  The email states that protesters had blocked access to the building, that Plaintiff was shoved out of the building and that protesters began "recording [him], following [him] across the street, and verbally threatening [him], stating that [he] would be "found" and "[they] will have [him] arrested."  *Id.*, Ex. B. Notably, the letter does not (1) request any specific action or (2) state that Plaintiff felt discriminated against or that he was Jewish or Israeli or "perceived" as such by the protesters.  *Id.*

A TNS employee promptly responded, acknowledging Plaintiff's frustrations, telling him that this information was being provided to the Student Conduct Office, and encouraging him "to consider options for resources for reporting and additional support," including a link from which Plaintiff could file a formal complaint.  *Id*. ¶¶ 61–62, 64–65; Ex. B.  The Complaint does not allege that Plaintiff followed this process by filing a formal complaint.

Three days later, on December 7, 2023, at 6:48 p.m., Plaintiff received a formal Notice of the Title IX complaints made by SD and VS against him and advising him of his rights during this investigative process.  *Id*. ¶¶ 67, 70–71; Ex. C.  Included with the notification regarding SD's complaint was a No-Contact Order issued by the Title IX Office prohibiting contact of any kind between Plaintiff and SD, including on social media.  *Id.* ¶ 72; Ex. C.  Nowhere does Plaintiff allege that SD, VS or any other individual violated the No-Contact Order or made any postings about Plaintiff – or had any contact with him whatsoever – after TNS issued it.  In fact, Plaintiff does not allege that he suffered ***any*** harassment by ***any*** individual after the social media posts, which took place sometime between December 4, 2023 and December 7, 2023.

Plaintiff responded to this outreach at 8:45 a.m. the next morning, denying the claims and also reporting that SD and others had posted about him on social media. *Id*. ¶ 74; Ex. C. He also complained about an article regarding the situation which ran in the student-run newspaper the day before, on December 7, 2023. *Id*. ¶ 75 & n.59; *see also id.* at Ex. D (email sent before notice of the Title IX complaint raising concerns about article). Plaintiff alleges that due to SD's and VS' "harassment campaign" against Plaintiff, he was "fearful of harassment, stalking, intimidation, and generalized hostility against him on campus." *Id.* ¶ 79. He does not indicate his belief that he was subject to discrimination based on his national origin. *Id.*, Ex. C.

In a separate communication, shortly after midnight on December 8th – and within hours of receiving the Title IX complaint against him – Plaintiff emailed TNS administrators, stating that (although he had not filed a formal complaint) it was his understanding that "[his] concerns are being reviewed by Student Conduct and Community Standards." *Id.*, Ex. F. He claimed to be "deeply troubled by what seems to be the school's hinted support of these students, who have actively impeded others from attending classes and preparing for finals." *Id.* While Plaintiff states that he was "urgently awaiting a prompt and equitable resolution of this matter," he did not claim discrimination. *Id.* To the contrary, he claimed "discrimination and unjust treatment ***that others***, including [his] Jewish friends, have endured . . . ." *Id.* ¶ 83; Ex. F (emphasis added).

In response, TNS employee Kate Eichhorn, exchanged several emails with Plaintiff between December 7, 2023 to December 10, 2023 in which (1) Eichhorn questioned whether Plaintiff had actually contacted someone from the Student Conduct Office; (2) Eichhorn offered to meet with him; and (3) Plaintiff acknowledged they had met and thanked Eichhorn for her "caring approach and responsiveness" which brought him "reassurance." *Id.* ¶¶ 81–83, 85; Ex. F.

On December 12, 2023, Cassita Charles-Bowie, from TNS's Title IX Office, reached out to Plaintiff about the Title IX complaint against Plaintiff. *Id.* ¶¶ 86–88; Ex. G. He met with Charles-Bowie on December 20, 2023. *Id.* ¶ 90. He claims that the investigation then "stalled" in January and February of 2024 – allegedly "due to lack of professionalism and diligence," although in fact (1) much of this was winter break and (2) Charles-Bowie was on jury duty for the month of January 2024 and sick in February. *Id.* ¶¶ 91–92, 101; Exs. H, L.

On February 5, 2024, toward the beginning of the semester and while Charles-Bowie was still on jury duty, she wrote Plaintiff about the Title IX report stating: "I am putting together the investigative report" and thanking Plaintiff for his patience. *Id.* ¶ 92; Ex. H. Plaintiff responded by sending Charles-Bowie his response to SD's complaint which did not deny having made homophobic comments, but did explain his version of the events around the alleged assault. *Id.* ¶ 93; Ex. H. He made no reference to national origin discrimination.

A few weeks later, on February 21, 2024, TNS provided Plaintiff with a draft of the investigative report concerning the Title IX complaint. *Id.* ¶ 95; Ex. I. Plaintiff responded the same day with an email raising concerns about the content of the report and stating, for the first time, that he believed the actions against him during the December 4, 2023 incident "could potentially infringe upon Title VI." *Id.* ¶ 95; Ex J at 2. Charles-Bowie responded the next day that the details of the report were still being finalized and that "specific possible policy violations regarding [SD's] actions on 12/4/2023 . . . are being handled separately by Student Conduct and Community Standards." *Id.*, Ex. J at 3. In response Plaintiff expounded on his earlier (and new) allusion to Title VI stating that he "was denied access to the University Center due to an assumption regarding having a Jewish identity," but also noting that he is not, in fact, Jewish. *Id.* ¶ 97; Ex. J at 4.

Most of the remaining 300 plus allegations in the Complaint constitute a hyper-detailed (and unnecessary) summary of various back and forth communications between TNS and Plaintiff and/or his attorneys complaining about the investigation into the competing complaints. Only a few points are relevant for purposes of this Motion:

- By May 1, 2024, TNS had addressed and resolved both complaints using educational measures tailored to the circumstances. *Id.* ¶ 155. The complaints were therefore resolved within a little over four months of having been made. As noted above, part of this time involved TNS' winter break, and some resulted from Plaintiff's own actions, including his requested extension of deadlines in mid-April. *Id.* ¶¶ 137–41; Ex. S.

- Plaintiff does not allege that he suffered any additional harassment while the investigation and resolution was in progress. While Plaintiff claims he was denied a "personal escort" on campus during an encampment by protesters, and that he "was afraid that he would be subject to harassment," he does not allege that he was, in fact, subject to any harassment or had any personal contact with the protesters. He acknowledges that he was offered other support and resources in response to his concerns about the encampment. *Id.* ¶¶ 150–54; Ex. U.

## ARGUMENT

### I.    Legal Standard.

A Rule 12(b)(6) motion to dismiss examines the sufficiency of the complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotations omitted); *see also Red Rock Sourcing LLC v. JGX LLC*, No. 21 Civ. 1054 (JPC), 2024 WL 1243325, at *10 (S.D.N.Y. Mar. 22, 2024). Although a court must accept the plaintiff's factual allegations as true for purposes of a motion to dismiss, conclusory allegations or legal conclusions masquerading as factual conclusions are not to be credited. *Ashcroft*, 556 U.S. at 677–78; *see also Smith v. Local 819 Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). Rather, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Johnson v. Nat'l Football League Players Ass'n*, No. 17-cv-5131 (RJS), 2018 WL 8188558, at *7 (S.D.N.Y. Oct. 3, 2018), *aff'd*, 820 F. App'x 51 (2d Cir. 2020).

## II.     Plaintiff Fails To State A Hostile Environment Claim Under Title VI (Count I).

Title VI prohibits educational institutions from intentionally discriminating against students because of their race, color, or national origin. *See* 42 U.S.C. § 2000d.  While the Supreme Court has allowed an implied private right of action under Title VI, because the statute was passed under Congress' spending power, such claims are available only "where the funding recipient engages in intentional conduct that violates the clear terms of the statute." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641–42 (1999).[3]  In other words, claims are available only for intentional discrimination based on a student's national origin. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (stating it is "beyond dispute" that Title VI "prohibits only intentional discrimination"); *see also Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 619 (6th Cir. 2019) ("By design and effect, the *Davis* Court's Title IX private cause of action against a school for its response to student-on-student sexual harassment is a 'high standard' that applies only 'in certain limited circumstances.'").

The Supreme Court has twice held that an educational institution cannot be sued for damages under the judicially implied Title IX or Title VI cause of action unless ***the school*** engages in intentional discrimination. *Gebser v. Largo Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–92 (1998); *Davis*, 526 U.S. at 642–43.  In the context of peer-on-peer harassment, *Davis* established that a school is not liable merely because harassment occurs in its programs. *Davis*, 526 U.S. at 641–42.  It is not liable for failing to remedy past acts of harassment committed by students. *Id.*

---

[3] The Supreme Court interprets Title IX and Title VI coextensively. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002) ("the Court has interpreted Title IX consistently with Title VI") (citation omitted); *Curto v. Edmundson*, 392 F.3d 502, 504 n.3 (2d Cir. 2004) (citation and internal quotations omitted).

at 633, 645.  Rather, a *school* engages in intentional discrimination actionable under Title VI only where it makes an affirmative decision not to address known, ongoing harassment, thus allowing the harassment to continue.  *Id.*; *Gebser*, 524 U.S. at 290.  In this context, that means (1) "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities," *Davis*, 526 U.S. at  633; (2) the school's deliberate indifference "subjects" the student to discriminatory harassment, *id.* at 645; and (3) the harassment caused by the school's deliberate indifference is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit" provided by the school.  *Id.* at 633.

Plaintiff cannot meet the "high bar" for stating a claim for deliberate indifference.  *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 309 (S.D.N.Y. 2018).  First and fundamentally, Plaintiff cannot show that TNS discriminated against him based on his national origin because he is not Jewish.  Second, TNS did not subject Plaintiff to any harassment because he does not allege that he suffered any harassment after TNS was put on notice of his claims.  Finally, Plaintiff does not adequately allege that TNS acted with deliberate indifference.

### A.  TNS Could Not Have Discriminated Against Plaintiff Since He Is Not Jewish.

The plain language of Title VI states that no one should be subjected to discrimination "on the ground of race, color, or national origin."  42 U.S.C. § 2000d.  Assuming that Jewish ancestry is covered by Title VI, TNS could not have subjected Plaintiff to discrimination based on Jewish ancestry because he is not of Jewish ancestry.  Compl. ¶¶ 37, 46.  It's really that simple – in no sense can a school "subject" a student to discrimination "on the grounds" of a protected characteristic, or engage in intentional discrimination, if that student does not possess the claimed characteristic.

Title VI requires that Plaintiff prove that TNS' actions were motivated by discrimination and that the discriminatory effect is to deprive a student of an educational opportunity or benefit.

*See Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665-66 (2d Cir.2012). Plaintiff must thus prove that the defendant's actions were motivated by discrimination and that he was treated differently "**because of** [his] 'race, color, or national origin.'" *Chandrapaul v. City Univ. of N.Y.*, No. 14 Civ. 790 (AMD) (CLP), 2016 WL 1611468, at *55 (E.D.N.Y. Apr. 20, 2016) (emphasis added).

Thus, for example, in *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp.3d 245 (S.D.N.Y. 2025), this Court recognized that, particularly when dealing with harassment in the context of protected speech, courts must ensure that the alleged harassment is targeted **at those of Jewish ancestry**. *Id.* at 271 (distinguishing between "messages [that] were intended to target particular Jewish students, as opposed to efforts to communicate a political message to the Cooper Union community at large."). While the Court allowed certain claims to proceed brought by **Jewish** students, it did so because those statements were specifically targeted at **Jewish** students who could therefore have lost educational opportunities and benefits because the comments created a discriminatory environment that harmed them as students of **Jewish** ancestry. *Id.* at 278 ("Jewish students at Cooper Union were subject to antisemitic harassment that created an objectively hostile educational environment."). Plaintiff cannot state a Title VI claim without showing that he was deprived of benefits or opportunities **because of discrimination against him**. *Zeno*, 702 F.3d at 667 (noting that jury can find a hostile environment where the plaintiff "was discriminatorily deprived of . . . educational benefits").

Plaintiff tries to avoid this result by suggesting that his alleged harassers "perceived" him as Jewish. But that is not the standard. *See Tolbert*, 242 F.3d at 69. There are at least three fundamental problems with this argument.

10

***First***, TNS is aware of no cases that have applied the narrow, implied cause of action under Title VI to a student's "perceived" national origin, especially where that student was not in fact a member of the protected class.[4]  Nothing in the text of Title VI suggests Congress intended to permit claims based on discrimination against one's "perceived" ancestry.  Because Title VI was passed under Congress' Spending Clause authority, Congress needs to set out a recipient's liability "unambiguously."  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  "So even if there were any ambiguity [that Title VI does not apply to discrimination based on perceptions], that very ambiguity would require [the Court] to adopt the less expansive reading of Title [VI]."  *Kollaritsch*, 944 F.3d at 629 (Thapar, J., concurring); *see also Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir. 2024).[5]

***Second***, even if Title VI permitted claims based on "perceived" ancestry, Plaintiff does not plausibly allege that his harassers perceived him to be Jewish.  Plaintiff merely alleges that he was called the following names by SD: "Zio" (short for "Zionist"),[6] "bigot," "homophobic," and

---

[4] While Title VII is broader than Title VI, it is worth noting that courts have routinely declined to extend the protection of Title VII to include to persons who are only perceived to be members of a protected class.  *See Uddin v. Universal Avionics Sys. Corp.*, No. 05 Civ. 1115(TWT), 2006 WL 1835291, at *5–6 (N.D. Ga. June 30, 2006) ("Title VII does not explicitly protect persons who are *perceived* to belong to a protected class.") (emphasis in original); *Butler v. Potter*, 345 F.Supp.2d 844, 850 (E.D. Tenn. 2004) ("Title VII protects those persons that belong to a protected class, . . . and says nothing about protection of persons who are *perceived* to belong to a protected class.") (emphasis in original; internal citation omitted).  While the "Second Circuit has yet to address whether Title VII's protections extend to individuals who are perceived to be members of a protected class," (*Romero v. St. Vincent's Servs.*, No. 19-CV-7282(KAM)(ST), 2022 WL 2079648, at *7 (E.D.N.Y. June 10, 2022), at least one court in this District has declined to extend such protection.  *See Lewis v. North Gen. Hosp.*, 502 F.Supp.2d 390, 401 (S.D.N.Y. 2007) (dismissing Title VII claim because "the protections of Title VII do not extend to persons who are merely 'perceived' to belong to a protected class").

[5] To the extent Plaintiff's attempt to import agency guidance that might suggest a broader interpretation of Title VI, any such interpretation has no application to a claim for damages in Court.  *Sandoval*, 532 U.S. at 281–82; *Gebser*, 523 U.S. at 292 ("We have never held . . . that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements.").

[6] A "Zionist" is someone who supports Zionism, or the "establishment of a Jewish national or religious community in Palestine."  Zionism,       Merriam-Webster       Dictionary,       https://www.merriam-webster.com/dictionary/Zionism#dictionaryentry-1 (last visited July 18, 2025).  One does not need to be Jewish or from Israel to be a Zionist, so it is not plausible to conclude that those who called Plaintiff a Zionist were commenting on his religion, rather than his politics.

11

"Islamophobic," which taken alone, are unrelated to Jewish identity. Compl. ¶¶ 6, 46, 54–55. These purported expressions are either generalized slurs or refer to those who support a Jewish State; people who support Israel need not be Jewish. *See*, *e.g.*, *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 13–15 (2d Cir. 2013) (affirming dismissal of Title VI claims because the "complaint is devoid of factual allegations that would reasonably give rise to" discrimination of a protected class and plaintiffs do not allege that any references of "their [protected characteristics], much less that they did so in a derogatory manner," and plaintiffs' "naked allegation that they were treated differently" from those outside their protected class "cannot demonstrate a plausible entitlement to Title VI relief") (internal quotations and citations omitted); *Diaz v. City Univ. of N.Y.*, No. 15-CV-1319, 2015 WL 13746673, at *9 (S.D.N.Y. Nov. 16, 2015) ("Plaintiff simply fails to allege any specific facts that would support . . . a theory [that his alleged mistreatment was due to discriminatory animus], and his conclusory allegations of discrimination do not suffice to meet his pleading burden."), *report and recommendation adopted*, 2016 WL 958684 (Mar. 8, 2016).

  ***Third***, even if Plaintiff's harassers perceived him as Jewish, it is undisputed that TNS did not. Plaintiff admits that he ***told*** TNS that he was ***not*** Jewish. Compl., Ex. J. Title VI does not permit vicarious liability for the actions of students; it only permits liability where the school itself has engaged in intentional national origin discrimination. *Davis*, 526 U.S. at 640–41 (noting that a school is liable only for its "own misconduct"). If TNS did not perceive Plaintiff to be Jewish, it could not have discriminated against him based on a perception that he is Jewish.

  Because Plaintiff is not Jewish, he could not have been discriminated against based on his Jewish identity. For this reason alone, Plaintiff's hostile environment claim under Title VI fails.

**B.  Plaintiff Has Not Alleged That TNS Subjected Him To Discrimination.**

Under *Gebser* and *Davis*, a school is liable only for deliberate indifference after it receives

actual notice, and only where its deliberate indifference subjects the student to further harassment.

*Gebser*, 524 U.S. at 290; *Davis*, 526 U.S. at 633, 645.  Thus, in *Kollaritsch*, the Court held that to

make out a Title IX deliberate indifference claim, a plaintiff must prove that he or she suffered

actionable harassment ***after*** the school learned of the harassment, such that the school's failure to

respond in fact ***causes*** the student to suffer harassment.  *See Kollaritsch*, 944 F.3d at 618.  While

the Second Circuit has not yet addressed this issue, a court in this Circuit has found the finding in

*Kollaritsch* to be persuasive. *See Posso v. Niagara Univ.*, No. 19-CV-1293-LJV-MJR, 2020 WL

8771334, at *9 (Nov. 2, 2020 W.D.N.Y.) ("Applying the law of *Davis* as understood by the Sixth

Circuit, . . . Doe-2 has not alleged that any further severe, pervasive, or objectively offensive

conduct occurred after she made a report to the school."), *report and recommendation adopted in*

*part, denied in part and deferred in part*, 518 F.Supp.3d 688 (W.D.N.Y. 2021).  Additionally,

courts in this Circuit have consistently held that a school is not liable simply for an inadequate

response, its inadequate response must ***cause*** the student to suffer discriminatory harassment.  *KF*

*v. Monroe Woodbury Centr. Sch. Dist.*, No. 12-CV-2200, 2012 WL 1521060, at *6 (S.D.N.Y. Apr.

30, 2012) (" . . . liability under Title IX attaches where a school . . ., ***either through grossly***

***inadequate action or no action at all . . . effectively causes the student to encounter***

***discrimination***.") (internal citation and quotation marks omitted), *aff'd*, 531 F. App'x 132 (2d Cir.

2013); *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *9 (N.D.N.Y. Aug. 22,

2000) ("[T]he Supreme Court now requires some harm to have befallen plaintiff *after* the school

learned of the harassment.  As there have been no credible allegations of subsequent harassment,

no liability can be attributed to the University.") (emphasis in original; citation omitted); *DT v.*

*Somers Cent. Sch. Dist.*, 588 F. Supp. 2d 485, 497 (S.D.N.Y. 2008) ("Given . . . that defendants

engaged in some forms of investigation into the Cafeteria Incident . . . and the fact that [plaintiff] was never again subjected to harassment by [his peers], this Court finds that defendants' response was not so deliberately indifferent as to be clearly unreasonable."), *aff'd*, 348 F. App'x 697, 700 (2d Cir. 2009) (affirming that defendants were not deliberately indifferent because there was no evidence that "the teacher's actions . . . 'effectively caused' the subsequent harassment").

TNS did not cause Plaintiff to suffer any discriminatory harassment.  By December 8, 2023, TNS had put in place a no contact order, because it had received a formal complaint against Plaintiff under Title IX.  Compl. ¶ 72; Ex. C. While Plaintiff alleges that he was subjected to various internet harassment by SD and others before he received the no contact notice, he does not allege that this online harassment continued after the no contact order was entered.  And, TNS could not have been deliberatively indifferent to any Title VI discrimination against Plaintiff at that time, because Plaintiff had not informed any official at TNS with the authority to take action, that he even thought he was being discriminated against.[7]  As explained above, it was not until February 21, 2024 that Plaintiff first raised that his concerns "could potentially infringe upon Title VI."  Compl. ¶ 95; Ex J.  His complaint was resolved a little over two months later, and he does not allege that he suffered any harassment between February 2024 and May 1, 2024 (or at any time thereafter).

### C.  TNS' Actions Were Not Deliberately Indifferent.

Finally, Plaintiff has not sufficiently alleged that TNS' response to the alleged harassment amounted to "deliberate indifference."  As the Second Circuit has recognized, a college's actions will constitute deliberate indifference only "if they are clearly unreasonable in light of known

---

[7] "Actual notice" means that "an official 'with authority to take corrective action to end the discrimination' is given 'actual notice' of the discrimination . . . ."  *Ellis v. Univ. of Rochester*, No. 19-CV-6380 CJS, 2024 WL 493504, at *26 (W.D.N.Y. Feb. 8, 2024) (quoting *Naumovski v. Norris*, 934 F.3d 200, 221 (2d Cir. 2019)).

circumstances." *Zeno*, 702 F.3d at 666. Plaintiff alleges that TNS was "deliberately indifferent" because it "enabled a hostile environment" and failed "to address the discrimination, harassment, and retaliation White suffered and [refused] to address clear violations of its policies." Compl. ¶¶ 170, 176. However, *Davis* "stress[ed]" that its holding "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Davis*, 526 U.S. at 648. Federal law recognizes that colleges must "enjoy the flexibility they require" to respond to harassment, and does not require institutions like TNS to impose disciplinary sanctions where other appropriate interventions, such as educational responses, serve the goals of accountability and reflect a considered and appropriate institutional response. *Id.*

While Plaintiff contends that TNS "refused to investigate" Plaintiff's Title VI complaints, his own allegations contradict this conclusory claim. *See* Compl., Exs. L, O, P, R, V. And while Plaintiff complains that the investigation took too long, delay alone is not deliberate indifference. The Second Circuit has held that "delay may indicate deliberate indifference only when it is lengthy and unjustified." *Tubbs*, 343 F. Supp. at 311. Here, the total time to resolve the complaints was a little over four months, and a little over two months after Plaintiff first raised a Title VI concern. Compl. ¶¶ 59, 67, 95; Exs. B, J. In *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020), the Court held that a university did not act with deliberate indifference where it took ***eight and a half months*** to resolve a reported sexual assault, including taking several weeks to meet with the Respondent after the initial report. *Id.* at 1106. Other courts in this Circuit have held that comparable times to complete an investigation are not actionable. *See*, *e.g.*, *Doe v. Hobart & William Smith Colls.*, No. 6:17-cv-6762, 2021 WL 751272, at *8 (W.D.N.Y. Jan. 25, 2021) (investigation spanning four months from initial disclosure to disciplinary hearing not

deliberate indifference). And, any purported delays are not unjustified: the Complaint shows that Charles-Bowie was on jury duty for the month of January and suffered from an illness some time in February, circumstances which were *not* related to any discrimination based on a protected characteristic (*id.* ¶¶ 91–92; Exs. H, L), and Plaintiff himself asked for a month-long extension. Compl. ¶¶ 137–41; Ex. S.

Plaintiff also expresses frustration that "no disciplinary sanction" or "consequence" was imposed on SD, only an educational consequence. *Id.* ¶ 176. However, "[t]he Supreme Court has rejected the notion that victims of peer harassment have a right under Title VI to make particular remedial demands." *See T.C. v. Valley Cent. Sch. Dist.*, 777 F.Supp.2d 577, 596 (S.D.N.Y. 2011)); *see also Preusser ex rel. E.P. v. Taconic Hills Cent. Sch. Dist.*, No. 110–CV–1347, 2013 WL 209470, at *11 (N.D.N.Y. Jan. 17, 2013) (noting that "actually eliminating harassment is not a pre-requisite to an adequate response"). TNS is entitled to "sufficient deference to the decisions of school disciplinarians," particularly where, as here, there are no allegations that Plaintiff suffered any further harassment. *Zeno*, 702 F.3d at 666.

## III. Plaintiff Fails To Allege A Disparate Treatment Claim Under Title VI (Count II).

Plaintiff alleges that "TNS discriminated against [him] in violation of Title VI through disparate treatment by treating his Title VI complaints against SD . . . differently from SD's and VS's similarly situated complaints against him." Compl. ¶ 188. Like the hostile environment claim, this claim fails because Plaintiff is not Jewish. "Although evidence of disparate treatment may suffice to support an inference of discrimination," *Johnson*, 2018 WL 3966703, at *7, "[a] plaintiff relying on disparate treatment evidence must show [that] [ ]he was similarly situated in all material respects to the individuals with whom [ ]he seeks to compare h[im]self." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). In all instances, Title VI requires a showing of

intentional discrimination by the defendant, not a mere disparate effect. *Nungesser v. Columbia Univ.*, 244 F. Supp.3d 345, 361–62 (S.D.N.Y. 2017) (disparate impact insufficient without discriminatory intent). Thus, to state a disparate treatment claim, Plaintiff must prove that TNS discriminated against him ***because*** he is a member of a protected class. *Doe v. New York Univ.*, 438 F.Supp. 3d 172, 181 (S.D.N.Y. 2020) ("A Plaintiff must therefore show 'the defendant discriminated against him [or her] because of his [or her] sex; that the discrimination was intentional; and that the discrimination was a "substantial" or "motivating factor" for the defendant's actions.'").

The Complaint makes no such allegations. Plaintiff alleges only that TNS treated the complaint made against him by SD differently than it treated the complaint he brought against SD. But even if the Complaint supported such disparate treatment (and it does not), there is no suggestion that TNS did so ***because of Plaintiff's national origin***. Indeed, TNS could not have discriminated against Plaintiff based on his Jewish ancestry since he is not Jewish and it knew he was not Jewish. As such, the disparate treatment claim under Title VI fails.

## IV. The State Law Claims Should Also Be Dismissed.

The only basis asserted for federal jurisdiction in the Complaint over the state law claims is 28 U.S.C. § 1367, presumably because Plaintiff is also a citizen of New York. *See* Compl. ¶ 11. If the Court dismisses the federal claims, it should decline to exercise supplemental jurisdiction over the state law claims. *Chao v. 979 Second Ave. LLC*, No. 25-cv-00778 (ALC), 2025 WL 1224191, at *4 (S.D.N.Y. Apr. 24, 2025). Aside from this, the state law claims fail on the merits, too.

### A. Plaintiff Fails To State A Claim Under The NYSHRL, NYCRL And NYCHRL (Counts III–VIII).

Plaintiff fails to state a claim under the NYSHRL, the NYCRL and the NYCHRL[8] for the same reasons that his Title VI claim fails. Typically, claims under the NYSHRL and federal anti-discrimination statutes have been treated as "analytically identical and addressed together." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020). Additionally, where a plaintiff has not met their burden under the NYSHRL, their NYCRL claims must also be dismissed. *See Roenick v. Flood*, No. 20 Civ. 7213 (JPC), 2021 WL 2355108, at *6 n.2 (S.D.N.Y. June 9, 2021). Plaintiff's NYSHRL and NYCRL claims fail for the same reason that their Title VI claim fails—he has not shown that TNS discriminated against him because of his national origin.

To state a claim under the NYCHRL, Plaintiff must show that they suffered a hostile environment *because* of a protected characteristic. *See Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 451 (E.D.N.Y. 2013) (emphasis added). Plaintiff must therefore plead sufficient facts to prove that "the conduct is caused at least in part by discriminatory or retaliatory motives." *Anderson v. City of New York*, 712 F.Supp.3d 412, 435 (S.D.N.Y. 2024). For the reasons stated above, even under the "less regimented approach" adopted by the NYCHRL, Plaintiff fails to provide "adequate evidence" that would support the conclusion that **TNS** adversely treated Plaintiff because of his perceived Jewish (or Israeli) identity where he is not Jewish. *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-12137, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023).[9]

---

[8] "NYSHRL" refers to the New York State Human Rights Law, N.Y. Exec. L. § 296 *et seq*., "NYCRL" refers to the New York Civil Rights Law, N.Y. Civ. Rights L. § 40, *et seq*., and "NYCHRL" refers to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*.

[9] Additionally, the NYSHRL "does not indicate that its protections extend to a perceived member of a protected class." *Romero*, 2022 WL 2079648, at *7.

### B.  Plaintiff Fails To State A Claim For Breach Of Contract (Count IX).

Under New York law, courts will sometimes view a discipline policy as an implied contract – though it is unclear whether such a remedy is available where, as here, only an educational remedy was required and Plaintiff was neither suspended nor expelled.  *Fraad-Wolff v. Vassar Coll.*, 932 F. Supp. 88, 91–92 (S.D.N.Y. 1996) ("virtually all of the reported cases in which a student has challenged a private university's disciplinary proceedings were brought by students who had been suspended or expelled.").  In any event, such claims are limited to situations where the school "acted arbitrarily or [failed to] substantially compl[y] with its own rules and regulations."  *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 405 (W.D.N.Y. 2017) (quoting *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 208 (W.D.N.Y. 2013)); *Fraad-Wolff*, 932 F. Supp. at 91 ("[W]hatever the legal theory underlying plaintiff's claim may be, the crucial issue is whether defendant conducted the disciplinary proceedings against plaintiff substantially in accordance with its established procedures.").  Not everything that is written in official school documents creates an "enforceable contractual obligation[]"; instead, "***courts will only enforce terms that are specific and concrete***."  *Rolph*, 271 F. Supp. at 406 (emphasis added) (citation and quotation marks omitted).  "[A]spirational" language is "not enforceable", including aspirational timelines.  *Id.* at 407; *Pierre v. Univ. of Dayton*, No. 3:15-cv-362, 2017 WL 1134510, at *6, 9 (S.D. Ohio Mar. 27, 2017) (finding that plaintiff failed to state a breach of contract claim and the university complied with its policies).  Moreover, "a student cannot maintain a breach of contract claim against a university based solely on the implied covenant of 'good faith.'" *Evans v. Columbia Univ.*, No. 14-CV-2658 (NSR), 2015 WL 1730097, at *4 (S.D.N.Y. Apr. 13, 2015) (citation omitted).

Plaintiff does not allege specific promises violated by TNS.  Rather, Paragraph 305 of the Complaint copies and pastes statements from TNS' student handbook, and then alleges that TNS

"beached its express and implied contracts . . . to protect students from discrimination, harassment, and interference with their education" and further alleges that TNS "handled the grievance incompetently and unprofessionally". Compl. ¶¶ 305–07.

This is insufficient. ***First***, allegations consisting of "'general statements of policy' or 'broad pronouncements of [a] University's compliance with existing anti-discrimination laws . . . cannot provide the basis for a breach of contract claim.'" *Doe v. Hobart & William Smith Colls.*, 546 F. Supp.3d 250, 272 (W.D.N.Y. 2021).

***Second***, Plaintiff fails to allege facts from which to conclude that TNS failed to substantially comply with its policies and procedures. *Doe v. Skidmore Coll.*, 152 A.D.3d 932, 935 (3d Dep't 2017) (a court reviewing a private university's disciplinary determination must determine "whether the university substantially adhered to its own published rules and guidelines for disciplinary proceedings so as to ascertain whether its actions were arbitrary or capricious"). Plaintiff fails to identity what of the myriad policy excerpts he cites actually constitutes a clear and specific promise breached by TNS. To the contrary, he utilizes terms such as "incompetent," unprofessional," and "haphazard" to describe TNS' administration of its grievance process and then baldly claims "breach of contract." Compl. ¶¶ 307–08. This is insufficient. *Ward v. New York Univ.*, No. 99 CIV. 8733(RCC), 2000 WL 1448641, at *5 (S.D.N.Y. Sept. 28, 2000) ("bald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim.").

## V.    Plaintiff's Complaint Is In Violation Of Rule 8.

Even if the Court does not dismiss the Complaint with prejudice, it should require Plaintiff to replead the Complaint. Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "short and plain statement of the claims showing that the pleader is entitled to relief."

Federal Rule of Civil Procedure 8(d)(1) further requires that each allegation be "simple, concise, and direct." "The purpose of [Rule 8] is to provide fair notice of the claims and enable the adverse party to answer the complaint and prepare for trial." *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003). Prolix complaints are unfair to the Court and the parties and put an unnecessary burden on the defendant in answering the complaint. *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 77–78 (S.D.N.Y. 2003). "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial [pursuant to Rule 12(f)] . . . or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (affirming dismissal of a complaint that "spans 15 single-spaced pages and contains . . . a surfeit of detail").

Plaintiff's Complaint is 114 pages and contains 311 paragraphs, which includes photographs, excerpts of policies, and page after page that recite every detail of the interaction between Plaintiff and TNS. None of the evidence should be included in a complaint and TNS should not be burdened with filing an answer to a 311-paragraph complaint.

**<u>CONCLUSION</u>**

For the reasons set forth above, TNS respectfully request that the Court dismiss Plaintiff's claims against TNS in their entirety and with prejudice.

Dated: Philadelphia, Pennsylvania
    July 18, 2025                     Respectfully submitted,

                    TROUTMAN PEPPER LOCKE LLP


By:    _____
                    Michael E. Baughman
                    3000 Two Logan Square, Eighteenth and Arch Streets
                    Philadelphia, PA 19103
                    Telephone: (215) 981-4964
                    Email: michael.baughman@troutman.com
                    *Counsel for Defendant The New School*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of July 2025, I caused a true and correct copy of the foregoing *Defendant The New School's Memorandum of Law in Support of Motion to Dismiss* to be served via CM/ECF upon all parties entitled to notice.

_____

Michael E. Baughman