UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON WHITE,<br><br>                    Plaintiff,<br><br>v.<br><br>THE NEW SCHOOL,<br><br>                    Defendant. | Case No: 1:25-cv-02910-ALC<br><br>Hon. Andrew L. Carter, Jr. |

## DEFENDANT THE NEW SCHOOL'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

TROUTMAN PEPPER LOCKE LLP
Michael E. Baughman
3000 Two Logan Square, Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4964
Email: michael.baughman@troutman.com

*Counsel for Defendant The New School*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT ...........................................2

PROCEDURAL HISTORY...............................................................................................7

ARGUMENT .................................................................................................................8

I.      Legal Standard. ................................................................................................8

II.     Plaintiff Fails To State A Hostile Environment Claim Under Title VI (Count I)................9

        A.      TNS Could Not Have Discriminated Against Plaintiff Since He Is Not
                Jewish..................................................................................................10
        B.      TNS' Actions Were Not Deliberately Indifferent....................................14
        C.      Plaintiff Has Not Alleged That TNS Subjected Him To Severe and
                Pervasive Harassment. .........................................................................15

III.    Plaintiff Fails To Allege A Disparate Treatment Claim Under Title VI (Count II). .........18

IV.     Plaintiff Fails To Allege A Retaliation Claim Under Title VI (Count III). ......................19

V.      The State Law Claims Should Also Be Dismissed............................................21

        A.      Plaintiff Fails To State A Claim Under The NYSHRL, NYCRL And
                NYCHRL (Counts IV–XII). ...................................................................22
        B.      Plaintiff Fails To State A Claim For Breach Of Contract (Count XIII). ...............23

VI.     Plaintiff's Amended Complaint Is In Violation Of Rule 8.................................24

CONCLUSION..............................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ........................................................................................................ 9, 12

*Anderson v. City of New York*,
    712 F.Supp.3d 412 (S.D.N.Y. 2024) ...................................................................................... 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 8

*Barnes v. Gorman*,
    536 U.S. 181 (2002) ................................................................................................................ 9

*Butler v. Potter*,
    345 F.Supp.2d 844 (E.D. Tenn. 2004) ................................................................................. 12

*Chandrapaul v. City Univ. of N.Y.*,
    No. 14 Civ. 790 (AMD) (CLP), 2016 WL 1611468 (E.D.N.Y. Apr. 20, 2016) ..................... 11

*Chao v. 979 Second Ave. LLC*,
    No. 25-cv-00778 (ALC), 2025 WL 1224191 (S.D.N.Y. Apr. 24, 2025) .............. 12, 20, 21, 24

*Curto v. Edmundson*,
    392 F.3d 502 (2d Cir. 2004) ................................................................................................... 9

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ....................................................................................................... *passim*

*Diaz v. City Univ. of N.Y.*,
    No. 15 Civ. 1319 (PAC) (MHD), 2016 WL 958684 (S.D.N.Y. Mar. 8, 2016) ................. 13, 19

*Diaz v. City Univ. of N.Y.*,
    No. 15-CV-1319, 2015 WL 13746673 (S.D.N.Y. Nov. 16, 2015) .......................................... 13

*Doe v. Hobart & William Smith Colls.*,
    546 F. Supp.3d 250 (W.D.N.Y. 2021) ................................................................................... 24

*Doe v. Hobart & William Smith Colls.*,
    No. 6:17-cv-6762, 2021 WL 751272 (W.D.N.Y. Jan. 25, 2021) ........................................... 15

*Doe v. New York Univ.*,
    438 F.Supp. 3d 172 (S.D.N.Y. 2020) ..................................................................................... 18

*Doe v. Skidmore Coll.*,
    152 A.D.3d 932 (3d Dep't 2017) .........................................................................24

*Doherty v. Bice*,
    101 F.4th 169 (2d Cir. 2024) .............................................................................12

*DT v. Somers Cent. Sch. Dist.*,
    588 F. Supp. 2d 485 (S.D.N.Y. 2008), *aff'd*, 348 F. App'x 697 (2d Cir. 2009).....................16

*Preusser ex rel. E.P. v. Taconic Hills Cent. Sch. Dist.*,
    No. 110–CV–1347, 2013 WL 209470 (N.D.N.Y. Jan. 17, 2013) ...........................................15

*Eisenberg v. N.Y.C. Dep't of Educ.*,
    No. 24-CV-01661 (HG), 2025 WL 2022093 (E.D.N.Y. July 18, 2025) ................................17

*Evans v. Columbia Univ.*,
    No. 14-CV-2658 (NSR), 2015 WL 1730097 (S.D.N.Y. Apr. 13, 2015) ..............................23

*Farmer v. Shake Shack Enters., LLC*,
    473 F. Supp. 3d 309 (S.D.N.Y. 2020).................................................................22

*Fraad-Wolff v. Vassar Coll.*,
    932 F. Supp. 88 (S.D.N.Y. 1996) .....................................................................23

*Freckleton v. Mercy Coll. N.Y.*,
    No. 22 Civ. 1985 (KMK), 2023 WL 2648827 (S.D.N.Y. Mar. 27, 2023) ............................19

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*,
    765 F. Supp.3d 245 (S.D.N.Y. 2025)...................................................................11

*Gebser v. Largo Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998)........................................................................9, 10, 12, 15

*Johnson v. Nat'l Football League Players Ass'n*,
    No. 17-cv-5131 (RJS), 2018 WL 8188558 (S.D.N.Y. Oct. 3, 2018),
    *aff'd*, 820 F. App'x 51 (2d Cir. 2020).................................................................9, 18

*Kajoshaj v. N.Y.C. Dep't of Educ.*,
    543 F. App'x 11 (2d Cir. 2013) ........................................................................13

*Karasek v. Regents of the Univ. of Cal.*,
    956 F.3d 1093 (9th Cir. 2020) .........................................................................14

*Kaye v. N.Y.C. Health & Hosps. Corp.*,
    No. 18-cv-12137, 2023 WL 2745556 (S.D.N.Y. Mar. 31, 2023)...........................................22

*KF v. Monroe Woodbury Centr. Sch. Dist.*,
    No. 12-CV-2200, 2012 WL 1521060 (S.D.N.Y. Apr. 30, 2012), *aff'd*, 531 F.
    App'x 132 (2d Cir. 2013) ............................................................................................... 16

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
    944 F.3d 613 (6th Cir. 2019) ............................................................................... 9, 12, 15, 16

*Koumantaros v. City Univ. of New York*,
    No. 03–CV–10170 (GEL), 2007 WL 840115 (S.D.N.Y. Mar. 19, 2007) .............................. 19

*Landau v. Corp. of Haverford Coll.*,
    No. 24-cv-2044, 2025 WL 1796473 (E.D. Pa. June 30, 2025) ............................................. 13

*Lewis v. North Gen. Hosp.*,
    502 F.Supp.2d 390 (S.D.N.Y. 2007) .................................................................................. 12

*Mandell v. Cnty. of Suffolk*,
    316 F.3d 368 (2d Cir. 2003) ............................................................................................... 18

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) ......................................................................................... 25

*Nungesser v. Columbia Univ.*,
    244 F. Supp.3d 345 (S.D.N.Y. 2017) ................................................................................. 18

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ............................................................................................................... 12

*Pierre v. Univ. of Dayton*,
    No. 3:15-cv-362, 2017 WL 1134510 (S.D. Ohio Mar. 27, 2017) ......................................... 23

*Posso v. Niagara Univ.*,
    No. 19-CV-1293-LJV-MJR, 2020 WL 8771334 (Nov. 2, 2020 W.D.N.Y.),
    *report and recommendation adopted in part, denied in part and deferred in part*,
    518 F.Supp.3d 688 (W.D.N.Y. 2021) ................................................................................. 16

*R.S. v. Board of Educ.*,
    371 Fed. Appx. 231 (2d Cir. 2010) ..................................................................................... 17

*Red Rock Sourcing LLC v. JGX LLC*,
    No. 21 Civ. 1054 (JPC), 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) ................................. 8

*Roenick v. Flood*,
    No. 20 Civ. 7213 (JPC), 2021 WL 2355108 (S.D.N.Y. June 9, 2021) .................................. 22

*Rolph v. Hobart & William Smith Colls.*,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017) ............................................................................... 23

iv

*Romero v. St. Vincent's Servs.*,
  No. 19-CV-7282(KAM)(ST), 2022 WL 2079648 (E.D.N.Y. June 10, 2022)..................12, 22

*Russo v. New York Presbyterian Hosp.*,
  972 F. Supp. 2d 429 (E.D.N.Y. 2013) ....................................................................................22

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988)......................................................................................................25

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974)...................................................................................................................8

*Smith v. Local 819 Pension Plan*,
  291 F.3d 236 (2d Cir. 2002)......................................................................................................8

*Strunk v. U.S. House of Representatives*,
  68 F. App'x 233 (2d Cir. 2003) ..............................................................................................25

*Subbiah v. Univ. of Tex. at Dallas*,
  No. 3:10–CV–115–B, 2011 WL 1771806 (N.D. Tex. May 10, 2011), *aff'd sub nom.*,
  *Muthukumar v. Univ. of Tex. at Dallas*, 471 F. App'x 407 (5th Cir. 2012),
  *cert. denied*, 568 U.S. 1251 (2013) ......................................................................................20

*T.C. v. Valley Cent. Sch. Dist.*,
  777 F.Supp.2d 577 (S.D.N.Y. 2011)........................................................................................15

*Tubbs v. Stony Brook Univ.*,
  343 F. Supp. 3d 292 (S.D.N.Y. 2018)..............................................................................10, 14

*Uddin v. Universal Avionics Sys. Corp.*,
  No. 05 Civ. 1115(TWT), 2006 WL 1835291 (N.D. Ga. June 30, 2006) ................................12

*Wang v. State Univ. of N.Y. Health Scis. Ctr. at Stony Brook*,
  No. 02-cv-5840, 2006 WL 3939550 (E.D.N.Y. Feb. 23, 2006) ..............................................21

*Ward v. New York Univ.*,
  No. 99 CIV. 8733(RCC), 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ..............................24

*Z.B. v. Irving Indep. Sch. Dist.*,
  No. 3:17-CV-2583-B, 2019 WL 2716504 (N.D. Tex. June 28, 2019) ....................................21

*Zeno v. Pine Plains Cent. Sch. Dist.*,
  702 F.3d 655 (2d Cir.2012)........................................................................10, 11, 14, 15

**Statutes**

28 U.S.C. § 1367.............................................................................................................................21

42 U.S.C. § 2000d.......................................................................................................................9, 10

Fed. R. Civ. P. 8(d) ................................................................................................24, 25

Fed. R. Civ. P. 12(b)(6).................................................................................................8

Fed. R. Civ. P. 12(f) .....................................................................................................25

N.Y.C. Admin. Code § 8-101 *et seq.* ..................................................................7, 8, 22

N.Y. Civ. Rights L. § 40 *et seq.*.........................................................................7, 8, 22

N.Y. Exec. L. § 296 *et seq.* ................................................................................7, 8, 22

**Other Authorities**

*Student Code of Conduct*, The New School, https://app.getguru.com/card/Tr9A7A5c/Student-

    Code-of-Conduct (last visited October 10, 2025)...............................................................2

*Zionism*, Merriam-Webster Dictionary, https://www.merriam-

    webster.com/dictionary/Zionism#dictionaryentry-1 (last visited October 10, 2025)........ 3, 12

## PRELIMINARY STATEMENT

Plaintiff Brandon White ("Plaintiff") was a student at The New School ("TNS") in October 2023 when TNS' campus – like many throughout the country – was beset by campus protests relating to the events in Palestine. Plaintiff claims that these protests created a hostile environment for Jewish students, in violation of Title VI of the Civil Rights Act. Plaintiff, however, is not Jewish. Nor is he of Israeli descent. TNS could not have discriminated against Plaintiff based on his Jewish ancestry when he is not, in fact, Jewish.

Seeking to avoid this result, Plaintiff claims that certain pro-Palestine protesters discriminated against him based on the "perception" that he is Jewish. Plaintiff claims he was blocked from entering a student building by pro-Palestine protesters who called him a "Zionist" and shoved him during the encounter. The protesters, by contrast, claim that Plaintiff was the aggressor and that he used homophobic slurs, such as "faggot" and "tranny" while trying to punch them. The protesters posted their concerns on social media and filed a Title IX complaint against Plaintiff with TNS. Plaintiff then pursued his own complaint against the protesters. Months later, Plaintiff reframed his allegations by claiming that his Title VI rights were violated because the protesters "perceived" him to be Jewish, since they called him a "Zionist."

But calling someone a "Zionist" means that they support a specific ideology and political movement, not that they are Jewish or that they are from Israel. It does not appear that these protesters believed Plaintiff to be Jewish, as opposed to someone who did not share their political views. And, even if these protesters perceived Plaintiff to be Jewish, TNS did not. Indeed, Plaintiff specifically told the school that he is **_not_** Jewish. Title VI does not provide a claim based on "perceived" Jewish identity at all, and it certainly does not provide a claim against TNS where it is undisputed that TNS did not perceive Plaintiff to be Jewish.

1

Plaintiff's Title VI claims fail for other reasons too, including that he cannot show that any actions by TNS caused him to suffer discriminatory harassment or retaliation. And, TNS' decision to hold the students accountable through an educational intervention, consistent with its student development mission and institutional policies,[1] does not approach the standard of "deliberate indifference" necessary to support a Title VI claim. The Court should not entertain jurisdiction over the remaining state law claims and, even if it did, they are baseless too.

Taking the concerns Plaintiff raised to TNS as true (as opposed to an effort to blunt the force of the complaint that had been filed against him), he may well have been frustrated and annoyed by the actions of these protesters. And their message and tactics may have been deeply offensive and hurtful to the Jewish community (which TNS took appropriate action to address). But Plaintiff's national origin has nothing to do with this. Plaintiff cannot claim discrimination based on a Jewish ancestry which he does not have. His amended complaint should be dismissed.

## RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT

Following the attacks perpetrated by Hamas in Israel on October 7, 2023, college campuses across the country erupted with protests, fueled primarily by those opposing Israel's military response and the political situation in Palestine. ECF No. 25 ("Am. Compl.") ¶¶ 16, 19. TNS was one of those campuses. Plaintiff, a TNS student at the time, claims that the protests and caustic rhetoric associated with them "created a hostile environment for Jews and Israelis at TNS . . .." *Id.* ¶ 4; *see also id.* ¶ 36. Nowhere, however, does Plaintiff claim that this campus activism created a racially hostile environment *as to him*, because he is neither Israeli nor Jewish. *Id.* ¶¶ 5, 37.

---

[1] *Student Code of Conduct*, The New School, https://app.getguru.com/card/Tr9A7A5c/Student-Code-of-Conduct (last visited October 10, 2025) ("Sanction[s] are not intended to be solely punitive, as such they are issued with the educational philosophy of encouraging reflection on one's decisions and the impact on self, others, and community as well as the importance of continued education in and out of the classroom. Sanctions are determined with the seriousness of the conduct, corrective and learning opportunities of the student, prior conduct of the individual, as well as striving for consistency between other similar cases.").

Plaintiff nonetheless suggests that he was subjected to a hostile environment based on specific interactions with members of the group Students for Justice in Palestine ("SJP"). *Id.* On December 4, 2023, Plaintiff tried to access TNS' University Center when he ran into a protest by SJP. *Id.* ¶ 38. Plaintiff was stopped by SD (president of SJP), VS (a teaching assistant) and other protesters, who yelled at him and shoved him back. *Id.* ¶¶ 42–45. Plaintiff claims that SD allegedly confronted Plaintiff while yelling and swinging his arm near Plaintiff's face. *Id.* ¶ 46. Plaintiff alleges that SD then forcefully thrust his arm into Plaintiff and SD shouted at Plaintiff that he was a "Zio," short for Zionist. *Id.* Based on their use of this term, Plaintiff claims that "although [he] is not Jewish or Israeli, protest[e]rs targeted him with antisemitic, anti-Israeli harassment based on their perception that he is." *Id.* ¶ 37. Other than the protesters' use of the term "Zionist" to describe Plaintiff – which is defined by Merriam-Webster as "an international movement originally for the establishment of a Jewish national or religious community in Palestine and later for the support of modern Israel"[2] – the Amended Complaint offers no other facts suggesting that ***anyone*** thought Plaintiff was Jewish or Israeli. Again, he is not.

The protesters had a very different interpretation of the events of December 4th. According to the Amended Complaint, immediately after the protest, SD made a social media posting claiming that Plaintiff "punched me in the face and called me a faggot during today's actions and I would like to press charges . . .." *Id.* ¶ 53. Plaintiff claims that SD and others made additional posts in the ensuing weeks and months, claiming that Plaintiff had assaulted SD and made homophobic slurs, including asking people to identify Plaintiff and report him to the school. *Id.* ¶ 56. SD and VS also promptly filed a Title IX complaint with TNS' Title IX office alleging that

---

[2] *Zionism*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/Zionism#dictionaryentry-1 (last visited October 10, 2025).

Plaintiff had assaulted them, called them "faggots," called another student a "tranny" and told a student to "kill himself" and that he should "die in Gaza." *Id.* ¶ 67; Ex. C.

Meanwhile, on the evening of December 4, 2023, Plaintiff alleges that he emailed TNS' President, Provost, and other administrators complaining about the protests. *Id.* ¶¶ 59–60. The email states that protesters had blocked access to the building, that Plaintiff was shoved out of the building and that protesters began "recording [him], following [him] across the street, and verbally threatening [him], stating that [he] would be "found" and "[they] will have [him] arrested." *Id.*, Ex. B. Notably, the letter does not (1) request any specific action or (2) state that Plaintiff felt discriminated against or that he was Jewish or Israeli or "perceived" as such by the protesters. *Id.*

A TNS employee promptly responded, acknowledging Plaintiff's frustrations, telling him that this information was being provided to the Student Conduct Office, and encouraging him "to consider options for resources for reporting and additional support," including a link from which Plaintiff could file a formal complaint. *Id.* ¶¶ 61–62, 64–65; Ex. B. The Amended Complaint does not allege that Plaintiff followed this process by filing a formal complaint.

Three days later, on December 7, 2023, at 6:48 p.m., Plaintiff received a formal Notice of the Title IX complaints made by SD and VS against him and advising him of his rights during this investigative process. *Id.* ¶¶ 67, 70–71; Ex. C. Included with the notification regarding SD's complaint was a No-Contact Order issued by the Title IX Office prohibiting contact of any kind between Plaintiff and SD, including on social media. *Id.* ¶ 72; Ex. C. Nowhere does Plaintiff allege that SD, VS or any other individual violated the No-Contact Order or made any postings about Plaintiff – or had any contact with him whatsoever – after TNS issued it. While Plaintiff vaguely asserts that the social media posts continued for "weeks and months" (his original

complaint had alleged that it continued for "days and weeks"), *id.* ¶ 56, his Amended Complaint does not identify any specific social media posts, by date, made after December 7, 2023.

Plaintiff responded to this outreach at 8:45 a.m. the next morning, denying the claims and also reporting that SD and others had posted about him on social media. *Id.* ¶ 74; Ex. C. He also complained about an article regarding the situation which ran in the student-run newspaper the day before, on December 7, 2023. *Id.* ¶ 75 & n.59; *see also id.* at Ex. D (email sent before notice of the Title IX complaint raising concerns about article). Plaintiff alleges that due to SD's and VS' "harassment campaign" against Plaintiff, he was "fearful of harassment, stalking, intimidation, and generalized hostility against him on campus . . .." *Id.* ¶ 79. His written communication does not indicate his belief that he was subject to discrimination based on his national origin. *Id.*, Ex. C.

In a separate communication, shortly after midnight on December 8th – and within hours of receiving the Title IX complaint against him – Plaintiff emailed TNS administrators, stating that (although he had not filed a formal complaint) it was his understanding that "[his] concerns are being reviewed by Student Conduct and Community Standards." *Id.*, Ex. F. He claimed to be "deeply troubled by what seems to be the school's hinted support of these students, who have actively impeded others from attending classes and preparing for finals." *Id.* Again, while Plaintiff states that he was "urgently awaiting a prompt and equitable resolution of this matter," he did not claim discrimination. *Id.* To the contrary, he claimed "discrimination and unjust treatment ***that others***, including [his] Jewish friends, have endured . . .." *Id.* ¶ 83; Ex. F (emphasis added).

In response, TNS employee Kate Eichhorn, exchanged several emails with Plaintiff between December 7, 2023 to December 10, 2023 in which (1) Eichhorn questioned whether Plaintiff had actually contacted someone from the Student Conduct Office; (2) Eichhorn offered to meet with him; and (3) Plaintiff acknowledged they had met and thanked Eichhorn for her

"caring approach and responsiveness" which brought him "reassurance."  *Id.* ¶¶ 81–86; Ex. F. Although not included in any of his written communications, and although never previously mentioned, Plaintiff's Amended Complaint now claims (falsely) that he orally told Kate Eichhorn that he believed these individuals targeted him based on the perception that he was Jewish, though he does not deny that TNS knew that perception to be false.  *Id.*

On December 12, 2023, Cassita Charles-Bowie, from TNS' Title IX Office, reached out to Plaintiff about the Title IX complaint against Plaintiff.  *Id.* ¶ 92; Ex. G.  He met with Charles-Bowie on December 20, 2023.  *Id.* ¶ 94.  He claims that the investigation then "stalled" in January and February of 2024 – allegedly "due to lack of professionalism and diligence," although in fact (1) much of this was winter break and (2) Charles-Bowie was on jury duty for the month of January 2024 and sick in February.  *Id.* ¶¶ 95–96, 107; Exs. H, L.

On February 5, 2024, toward the beginning of the semester and while Charles-Bowie was still on jury duty, she wrote Plaintiff about the Title IX report stating:  "I am putting together the investigative report" and thanking Plaintiff for his patience.  *Id.* ¶ 96; Ex. H.  Plaintiff responded by sending Charles-Bowie his response to SD's complaint which did not deny having made homophobic comments, but did explain his version of the events around the alleged assault.  *Id.* ¶ 97; Ex. H.  Again, his written communications made no reference to national origin discrimination.

A few weeks later, on February 21, 2024, TNS provided Plaintiff with a draft of the investigative report concerning the Title IX complaint.  *Id.* ¶ 99; Ex. I.  Plaintiff responded the same day with an email raising concerns about the content of the report and stating, for the first time in writing, that he believed the actions against him during the December 4, 2023 incident "could potentially infringe upon Title VI."  *Id.* ¶ 99; Ex J at 2.  Charles-Bowie responded the next day that the details of the report were still being finalized and that "specific possible policy

violations regarding [SD's] actions on 12/4/2023 . . . are being handled separately by Student Conduct & Community Standards." *Id.*, Ex. J at 3.  In response Plaintiff expounded on his earlier (and new) allusion to Title VI stating that he "was denied access to the University Center due to an assumption regarding having a Jewish identity," but also noting that he is not, in fact, Jewish. *Id.* ¶ 101; Ex. J at 4.

Most of the remaining 360 plus allegations in the Amended Complaint constitute a hyper-detailed (and unnecessary) summary of various back and forth communications between TNS and Plaintiff and/or his attorneys complaining about the investigation into the competing complaints. Only a few points are relevant for purposes of this Motion:

- By May 1, 2024, TNS had addressed and resolved both complaints using educational measures tailored to the circumstances. *Id.* ¶ 161; Ex. V.  The complaints were therefore resolved within a little over four months of having been made.  As noted above, part of this time involved TNS' winter break, and some resulted from Plaintiff's own actions, including his requested extension of deadlines in mid-April. *Id.* ¶¶ 143–47; Ex. S.

- Other than vague references to unidentified social media posts, Plaintiff does not allege that he suffered any additional harassment while the investigation and resolution was in progress.  While Plaintiff claims he was denied a "personal escort" on campus during an encampment by protesters, and that he "was afraid that he would be subject to harassment," he does not allege that he had any personal contact with the protesters.  He acknowledges that he was offered support and resources in response to his concerns about the encampment. *Id.* ¶¶ 156–60; Ex. U.

## PROCEDURAL HISTORY

On April 8, 2025, Plaintiff initiated this lawsuit against TNS by filing a voluminous 114-page complaint alleging hostile environment and disparate treatment claims based on a perceived Jewish identity under Title VI of the Civil Rights Act of 1964, the New York State Human Rights Law § 296, *et. seq.* ("NYSHRL"), the New York Civil Rights Law § 40, *et. seq.* ("NYCRL"), the New York City Human Rights Law § 8-107 ("NYCHRL"), as well as a breach of contract claim.

*See* ECF No. 1.  On July 18, 2025, TNS filed a motion to dismiss the complaint under Rules 12(b)(6) and 8.  *See* ECF Nos. 18–19.  In response, on August 22, 2025, Plaintiff filed a request to the Court for leave to file an amended complaint, which TNS opposed.  *See* ECF Nos. 22–23.  On September 5, 2025, the Court granted Plaintiff permission to file an amended complaint (the "Amended Complaint"), which was filed on September 8, 2025.  *See* ECF No. 25.  The Amended Complaint alleges claims for hostile environment, disparate treatment and retaliation under Title VI of the Civil Rights Act of 1964 (Counts I–III), NYSHRL (Counts IV–VI), NYCRL (Counts VII–IX), and NYCHRL (Counts X–XII), and breach of contract (Count XIII).

For the reasons set forth below, Plaintiff has not cured the deficiencies that existed in the original complaint and the newly added claims of retaliation in the Amended Complaint similarly lack merit.  As such, Plaintiff fails to state a claim for each cause of action in the Amended Complaint and it should be dismissed in its entirety.

## ARGUMENT

### I.    Legal Standard.

A Rule 12(b)(6) motion to dismiss examines the sufficiency of the complaint.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotations omitted); *see also Red Rock Sourcing LLC v. JGX LLC*, No. 21 Civ. 1054 (JPC), 2024 WL 1243325, at *10 (S.D.N.Y. Mar. 22, 2024).  Although a court must accept the plaintiff's factual allegations as true for purposes of a motion to dismiss, conclusory allegations or legal conclusions masquerading as factual conclusions are not to be credited.  *Ashcroft*, 556 U.S. at 677–78; *see also Smith v. Local 819 Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).  Rather, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Johnson v. Nat'l Football League Players Ass'n*, No. 17-cv-5131 (RJS), 2018 WL 8188558, at *7 (S.D.N.Y. Oct. 3, 2018), *aff'd*, 820 F. App'x 51 (2d Cir. 2020).

## II.     Plaintiff Fails To State A Hostile Environment Claim Under Title VI (Count I).

Title VI prohibits educational institutions from intentionally discriminating against students because of their race, color, or national origin. *See* 42 U.S.C. § 2000d. While the Supreme Court has allowed an implied private right of action under Title VI, because the statute was passed under Congress' spending power, such claims are available only "where the funding recipient engages in intentional conduct that violates the clear terms of the statute." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641–42 (1999).[3] In other words, claims are available only for intentional discrimination based on a student's national origin. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (stating it is "beyond dispute" that Title VI "prohibits only intentional discrimination"); *see also Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 619 (6th Cir. 2019) ("By design and effect, the *Davis* Court's Title IX private cause of action against a school for its response to student-on-student sexual harassment is a 'high standard' that applies only 'in certain limited circumstances.'").

The Supreme Court has twice held that an educational institution cannot be sued for damages under the judicially implied Title IX or Title VI cause of action unless ***the school*** engages in intentional discrimination. *Gebser v. Largo Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–92 (1998); *Davis*, 526 U.S. at 642–43. In the context of peer-on-peer harassment, *Davis* established that a school is not liable merely because harassment occurs in its programs. *Davis*, 526 U.S. at 641–42. It is not liable for failing to remedy past acts of harassment committed by students. *Id.*

---

[3] The Supreme Court interprets Title IX and Title VI coextensively. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002) ("the Court has interpreted Title IX consistently with Title VI") (citation omitted); *Curto v. Edmundson*, 392 F.3d 502, 504 n.3 (2d Cir. 2004) (citation and internal quotations omitted).

at 633, 645. Rather, a *school* engages in intentional discrimination actionable under Title VI only where it makes an affirmative decision not to address known, ongoing harassment, thus allowing the harassment to continue. *Id.*; *Gebser*, 524 U.S. at 290. In this context, that means (1) "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities," *Davis*, 526 U.S. at 633; (2) the school's deliberate indifference "subjects" the student to discriminatory harassment, *id.* at 645; and (3) the harassment caused by the school's deliberate indifference is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit" provided by the school. *Id.* at 633.

Plaintiff cannot meet the "high bar" for stating a claim for deliberate indifference. *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 309 (S.D.N.Y. 2018). First and fundamentally, Plaintiff cannot show that TNS discriminated against him based on his national origin because he is not Jewish. Second, TNS did not subject Plaintiff to severe, pervasive harassment on the basis of his ancestry. Finally, Plaintiff does not adequately allege that TNS acted with deliberate indifference.

### A. TNS Could Not Have Discriminated Against Plaintiff Since He Is Not Jewish.

The plain language of Title VI states that no one should be subjected to discrimination "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. Assuming that Jewish ancestry is covered by Title VI, TNS could not have subjected Plaintiff to discrimination based on Jewish ancestry because he is not of Jewish ancestry. Am. Compl. ¶¶ 37, 46. It's really that simple – in no sense can a school "subject" a student to discrimination "on the grounds" of a protected characteristic, or engage in intentional discrimination, if that student does not possess the claimed characteristic. For this reason alone, the Title VI claims fail.

Title VI requires that Plaintiff prove that TNS' actions were motivated by discrimination and that the discriminatory effect is to deprive a student of an educational opportunity or benefit. *See Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665-66 (2d Cir.2012). Plaintiff must thus

10

prove that the defendant's actions were motivated by discrimination and that he was treated differently "***because of*** [his] 'race, color, or national origin.'" *Chandrapaul v. City Univ. of N.Y.*, No. 14 Civ. 790 (AMD) (CLP), 2016 WL 1611468, at *55 (E.D.N.Y. Apr. 20, 2016) (emphasis added).

Thus, for example, in *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp.3d 245 (S.D.N.Y. 2025), this Court recognized that, particularly when dealing with harassment in the context of protected speech, courts must ensure that the alleged harassment is targeted ***at those of Jewish ancestry***. *Id.* at 271 (distinguishing between "messages [that] were intended to target particular Jewish students, as opposed to efforts to communicate a political message to the Cooper Union community at large). While the Court allowed certain claims to proceed brought by ***Jewish*** students, it did so because those statements were specifically targeted at ***Jewish*** students who could therefore have lost educational opportunities and benefits because the comments created a discriminatory environment that harmed them as students of ***Jewish*** ancestry. *Id.* at 278 ("Jewish students at Cooper Union were subject to antisemitic harassment that created an objectively hostile educational environment."). Plaintiff cannot state a Title VI claim without showing that he was deprived of benefits or opportunities ***because of discrimination against him***. *Zeno*, 702 F.3d at 667 (noting that jury can find a hostile environment where the plaintiff "was discriminatorily deprived of . . . educational benefits").

Plaintiff tries to avoid this result by suggesting that his alleged harassers "perceived" him as Jewish. But that is not the standard. *See Tolbert*, 242 F.3d at 69. There are at least three fundamental errors with Plaintiff's argument.

***First***, TNS is aware of no cases that have applied the narrow, implied cause of action under Title VI to a student's "perceived" national origin, especially where that student was not in fact a

member of the protected class.[4]  Nothing in the text of Title VI suggests Congress intended to permit claims based on discrimination against one's "perceived" ancestry.  Because Title VI was passed under Congress' Spending Clause authority, Congress needs to set out a recipient's liability "unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  "So even if there were any ambiguity [that Title VI does not apply to discrimination based on perceptions], that very ambiguity would require [the Court] to adopt the less expansive reading of Title [VI]." *Kollaritsch*, 944 F.3d at 629 (Thapar, J., concurring); *see also Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir. 2024).[5]

**Second**, even if Title VI permitted claims based on "perceived" ancestry, Plaintiff does not plausibly allege that his harassers perceived him to be Jewish.  Plaintiff merely alleges that he was called the following names by SD: "Zio" (short for "Zionist"),[6] "bigot," "homophobic," and "Islamophobic," which taken alone, are unrelated to Jewish identity.  Am. Compl. ¶¶ 6, 46, 54–55. These purported expressions are either generalized slurs or refer to those who support a Jewish

---

[4] While Title VII is broader than Title VI, it is worth noting that courts have routinely declined to extend the protection of Title VII to include to persons who are only perceived to be members of a protected class.  *See Uddin v. Universal Avionics Sys. Corp.*, No. 05 Civ. 1115(TWT), 2006 WL 1835291, at *5–6 (N.D. Ga. June 30, 2006) ("Title VII does not explicitly protect persons who are *perceived* to belong to a protected class.") (emphasis in original); *Butler v. Potter*, 345 F.Supp.2d 844, 850 (E.D. Tenn. 2004) ("Title VII protects those persons that belong to a protected class, . . . and says nothing about protection of persons who are *perceived* to belong to a protected class.") (emphasis in original; internal citation omitted).  While the "Second Circuit has yet to address whether Title VII's protections extend to individuals who are perceived to be members of a protected class," (*Romero v. St. Vincent's Servs.*, No. 19-CV-7282(KAM)(ST), 2022 WL 2079648, at *7 (E.D.N.Y. June 10, 2022), at least one court in this District has declined to extend such protection.  *See Lewis v. North Gen. Hosp.*, 502 F.Supp.2d 390, 401 (S.D.N.Y. 2007) (dismissing Title VII claim because "the protections of Title VII do not extend to persons who are merely 'perceived' to belong to a protected class").

[5] To the extent Plaintiff attempts to import agency guidance that might suggest a broader interpretation of Title VI, any such interpretation has no application to a claim for damages in Court.  *Sandoval*, 532 U.S. at 281–82; *Gebser*, 523 U.S. at 292 ("We have never held . . . that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements.").

[6] A "Zionist" is someone who supports Zionism, or the "establishment of a Jewish national or religious community in Palestine."   Zionism,   Merriam-Webster   Dictionary,   https://www.merriam-webster.com/dictionary/Zionism#dictionaryentry-1 (last visited October 10, 2025).  One does not need to be Jewish or from Israel to be a Zionist, so it is not plausible to conclude that those who called Plaintiff a Zionist were commenting on his religion, rather than his politics.

State; people who support Israel need not be Jewish.  *See*, *e.g.*, *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 13–15 (2d Cir. 2013) (affirming dismissal of Title VI claims because the "complaint is devoid of factual allegations that would reasonably give rise to" discrimination of a protected class and plaintiffs do not allege that any references of "their [protected characteristics], much less that they did so in a derogatory manner," and plaintiffs' "naked allegation that they were treated differently" from those outside their protected class "cannot demonstrate a plausible entitlement to Title VI relief") (internal quotations and citations omitted); *Diaz v. City Univ. of N.Y.*, No. 15-CV-1319, 2015 WL 13746673, at *9 (S.D.N.Y. Nov. 16, 2015) ("Plaintiff simply fails to allege any specific facts that would support . . . a theory [that his alleged mistreatment was due to discriminatory animus], and his conclusory allegations of discrimination do not suffice to meet his pleading burden."), *report and recommendation adopted*, 2016 WL 958684 (Mar. 8, 2016).  Particularly in the context of claims based on speech alone, the Court should be wary about implying discriminatory intent without clear evidence showing such intent.  *See Landau v. Corp. of Haverford Coll.*, No. 24-cv-2044, 2025 WL 1796473, at *2–3 (E.D. Pa. June 30, 2025).

*Third*, even if Plaintiff's harassers perceived him as Jewish, it is undisputed that TNS did not.  Plaintiff admits that he told TNS that he was not Jewish.  Am. Compl., Ex. J.  Title VI does not permit vicarious liability for the actions of students; it only permits liability where the school itself has engaged in intentional national origin discrimination.  *Davis*, 526 U.S. at 640–41 (noting that a school is liable only for its "own misconduct").  If TNS did not perceive Plaintiff to be Jewish, it could not have discriminated against him based on a perception that he is Jewish.

Because Plaintiff is not Jewish, he could not have been discriminated against based on his Jewish identity.  For this reason alone, Plaintiff's hostile environment claim under Title VI fails.

**B.  TNS' Actions Were Not Deliberately Indifferent.**

Plaintiff also has not sufficiently alleged that TNS' response to the alleged harassment amounted to "deliberate indifference."  As the Second Circuit has recognized, a college's actions will constitute deliberate indifference only "if they are clearly unreasonable in light of known circumstances." *Zeno*, 702 F.3d at 666.  Plaintiff alleges that TNS was "deliberately indifferent" because it "enabled a hostile environment" and failed "to address the discrimination, harassment, and retaliation Plaintiff suffered and [refused] to address clear violations of its policies." Am. Compl. ¶¶ 176, 184.  However, *Davis* "stress[ed]" that its holding "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Davis*, 526 U.S. at 648.  Federal law recognizes that colleges must "enjoy the flexibility they require" to respond to harassment and does not require institutions like TNS to impose disciplinary sanctions where other appropriate interventions, such as educational responses, serve the goals of accountability and reflect a considered and appropriate institutional response. *Id.*

While Plaintiff contends that TNS "refused to investigate" Plaintiff's Title VI complaints, his own allegations contradict this conclusory claim. *See* Am. Compl., Exs. L, O, P, R, V.  And while Plaintiff complains that the investigation took too long, delay alone is not deliberate indifference.  The Second Circuit has held that "delay may indicate deliberate indifference only when it is lengthy and unjustified." *Tubbs*, 343 F. Supp. at 311.  Here, the total time to resolve the complaints was a little over four months, and a little over two months after Plaintiff first raised a Title VI concern.  Am. Compl. ¶¶ 59, 67, 99; Exs. B, J.  In *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020), the Court held that a university did not act with deliberate indifference where it took ***eight and a half months*** to resolve a reported sexual assault, including taking several weeks to meet with the Respondent after the initial report. *Id.* at 1106.  Other courts

in this Circuit have held that comparable times to complete an investigation are not actionable. *See*, *e.g.*, *Doe v. Hobart & William Smith Colls.*, No. 6:17-cv-6762, 2021 WL 751272, at \*8 (W.D.N.Y. Jan. 25, 2021) (investigation spanning four months from initial disclosure to disciplinary hearing not deliberate indifference). And, any purported delays are not unjustified: the Amended Complaint shows that Charles-Bowie was on jury duty for the month of January and suffered from an illness some time in February, circumstances which were *not* related to any discrimination based on a protected characteristic (*id.* ¶¶ 95–96; Exs. H, L), and Plaintiff himself asked for a month-long extension. Am. Compl. ¶¶ 137–41; Ex. S.

Plaintiff also expresses frustration that "no disciplinary sanction" or "consequence" was imposed on SD, only an educational consequence. *Id.* ¶ 184. However, "[t]he Supreme Court has rejected the notion that victims of peer harassment have a right under Title VI to make particular remedial demands." *See T.C. v. Valley Cent. Sch. Dist.*, 777 F.Supp.2d 577, 596 (S.D.N.Y. 2011)); *see also Preusser ex rel. E.P. v. Taconic Hills Cent. Sch. Dist.*, No. 110–CV–1347, 2013 WL 209470, at \*11 (N.D.N.Y. Jan. 17, 2013) (noting that "actually eliminating harassment is not a pre-requisite to an adequate response"). TNS is entitled to "sufficient deference to the decisions of school disciplinarians," particularly where, as here, there are no allegations that Plaintiff suffered any further harassment. *Zeno*, 702 F.3d at 666.

### C. Plaintiff Has Not Alleged That TNS Subjected Him To Severe and Pervasive Harassment.

Finally, under *Gebser* and *Davis*, a school is liable only where its deliberate indifference subjects the student to harassment that is so severe, pervasive and objectively offensive that it effectively denies access to an education. *Gebser*, 524 U.S. at 290; *Davis*, 526 U.S. at 633, 645. Thus, in *Kollaritsch*, the Court held that to make out a Title IX deliberate indifference claim, a plaintiff must prove that he or she suffered actionable harassment **after** the school learned of the

15

harassment, such that the school's failure to respond in fact **causes** the student to suffer harassment. *See Kollaritsch*, 944 F.3d at 618; *see also Posso v. Niagara Univ.*, No. 19-CV-1293-LJV-MJR, 2020 WL 8771334, at *9 (Nov. 2, 2020 W.D.N.Y.) ("Applying the law of *Davis* as understood by the Sixth Circuit, . . . Doe-2 has not alleged that any further severe, pervasive, or objectively offensive conduct occurred after she made a report to the school."), *report and recommendation adopted in part, denied in part and deferred in part*, 518 F.Supp.3d 688 (W.D.N.Y. 2021). Additionally, courts in this Circuit have consistently held that a school is not liable simply for an inadequate response, its response must be so "clearly unreasonable" as to suggest deliberate indifference and the inadequate response must **cause** the student to suffer discriminatory harassment. *KF v. Monroe Woodbury Centr. Sch. Dist.*, No. 12-CV-2200, 2012 WL 1521060, at *6 (S.D.N.Y. Apr. 30, 2012) (" . . . liability under Title IX attaches where a school . . ., **either through grossly inadequate action or no action at all . . . effectively causes the student to encounter discrimination**.") (internal citation and quotation marks omitted), *aff'd*, 531 F. App'x 132 (2d Cir. 2013); *DT v. Somers Cent. Sch. Dist.*, 588 F. Supp. 2d 485, 497 (S.D.N.Y. 2008) ("Given . . . that defendants engaged in some forms of investigation into the Cafeteria Incident . . . and the fact that [plaintiff] was never again subjected to harassment by [his peers], this Court finds that defendants' response was not so deliberately indifferent as to be clearly unreasonable."), *aff'd*, 348 F. App'x 697, 700 (2d Cir. 2009) (affirming that defendants were not deliberately indifferent because there was no evidence that "the teacher's actions . . . 'effectively caused' the subsequent harassment").

By December 8, 2023, TNS had put in place a No-Contact Order, because it had received a formal complaint against Plaintiff under Title IX.  Am. Compl. ¶ 72; Ex. C. While Plaintiff alleges that he was subjected to various internet harassment by SD and others, he does not allege

any specific posting that occurred after December 8, 2023, instead just vaguely alleging that the postings continued for "months" (after previously alleging that they had continue for days and weeks). *Id.* ¶ 56.

And, any harassment that Plaintiff suffered was not so severe, pervasive and objectively offensive that it denied him access to an education. *See*, *e.g.*, *R.S. v. Board of Educ.*, 371 Fed. Appx. 231, 233–35 (2d Cir. 2010) (series of profane emails and subsequent confrontation about them not actionable harassment); *Eisenberg v. N.Y.C. Dep't of Educ.*, No. 24-CV-01661 (HG), 2025 WL 2022093, at *8 (E.D.N.Y. July 18, 2025) (emails with vulgar and threatening content not sufficiently severe, pervasive and objectively offensive). Being blocked from entering a building on a single occasion in early December is obviously not severe and pervasive harassment. Further, the only "harassment" Plaintiff supposedly faced after he put TNS on notice of his claims were social media postings by those who claimed they were assaulted by Plaintiff. In his Amended Complaint, and in response to Defendant's original Motion to Dismiss, Plaintiff changed his version of the facts to state that these posts continued "for weeks and months" (he originally said "days and weeks"). Am. Compl. ¶¶ 56, 86. But no details of the posts are provided, we do not know when these supposed posts were made or what they said. Certainly, these are not allegations sufficient to plausibly allege that any such postings created a hostile environment that was so severe and objectively offensive as to deprive Plaintiff of an educational benefit. And, as shown above, there certainly is no basis to conclude that any "harassment" from these posts was on the basis of Plaintiff's ***national origin***. To the contrary, the only reasonable inference from the Amended Complaint is that these individuals were angry at Plaintiff because they claimed he had assaulted them and made homophobic remarks about them. *See*, *e.g.*, *id*. ¶ 56 (only example of posts which show that the posters were questioning whether Plaintiff was transphobic and why he

had hit someone in the face).  Even if such posts continued after Plaintiff reported the conduct to TNS (which is not alleged), that is not severe and pervasive harassment covered by Title VI.

## III.    Plaintiff Fails To Allege A Disparate Treatment Claim Under Title VI (Count II).

Plaintiff alleges that "TNS discriminated against [him] in violation of Title VI through disparate treatment by treating his Title VI complaints against SD . . . differently from SD's and VS's similarly situated complaints against him." *Id.* ¶ 188.  Like the hostile environment claim, this claim fails because Plaintiff is not Jewish.  "Although evidence of disparate treatment may suffice to support an inference of discrimination," *Johnson*, 2018 WL 3966703, at \*7, "[a] plaintiff relying on disparate treatment evidence must show [that] [ ]he was similarly situated in all material respects to the individuals with whom [ ]he seeks to compare h[im]self." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).  In all instances, Title VI requires a showing of intentional discrimination by the defendant, not a mere disparate effect. *Nungesser v. Columbia Univ.*, 244 F. Supp.3d 345, 361–62 (S.D.N.Y. 2017) (disparate impact insufficient without discriminatory intent).  Thus, to state a disparate treatment claim, Plaintiff must prove that TNS discriminated against him ***because*** he is a member of a protected class. *Doe v. New York Univ.*, 438 F.Supp. 3d 172, 181 (S.D.N.Y. 2020) ("A Plaintiff must therefore show 'the defendant discriminated against him [or her] because of his [or her] sex; that the discrimination was intentional; and that the discrimination was a "substantial" or "motivating factor" for the defendant's actions.'").

The Amended Complaint makes no such allegations.  Plaintiff alleges only that TNS treated the complaint made against him by SD differently than it treated the complaint he brought against SD.  But even if the Amended Complaint supported such disparate treatment (and it does not), there is no suggestion that TNS did so ***because of Plaintiff's national origin***.  Indeed, TNS

could not have discriminated against Plaintiff based on his Jewish ancestry since he is not Jewish and it knew he was not Jewish.  As such, the disparate treatment claim under Title VI fails.

## IV.    Plaintiff Fails To Allege A Retaliation Claim Under Title VI (Count III).

Perhaps realizing that his hostile environment and disparate treatment claims are doomed, in his Amended Complaint, Plaintiff seeks to relabel these claims as "retaliation."  But Plaintiff fails to plead that TNS took any adverse action against him based on his reports of "harassment" so this claim should also be dismissed.

To state a claim for retaliation under Title VI, a plaintiff must "plausibly allege: '(1) participation in a protected activity known to the defendant[]; (2) adverse action by the defendant[] against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendant[']s adverse action.'"  *Diaz v. City Univ. of N.Y.*, No. 15 Civ. 1319 (PAC) (MHD), 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016) (quoting *Williams v. City Univ. of N.Y.*, No. 13 Civ. 1055 (CBA), 2014 WL 4207112, at *11 (E.D.N.Y. 2014)).  A "[p]laintiff may show a causal connection either (1) indirectly, by presenting evidence of temporal proximity between the protected activity and adverse action, or through other evidence such as different treatment of similarly situated students, or (2) directly, through evidence of retaliatory animus directed against . . . plaintiff by the defendant.'"  *Koumantaros v. City Univ. of New York,* No. 03–CV–10170 (GEL), 2007 WL 840115, at * 12 (S.D.N.Y. Mar. 19, 2007) (internal quotation marks and emphasis omitted).  "An adverse action is one that 'would deter an individual of ordinary firmness, situated similarly' from engaging in the protected activity."  *Freckleton v. Mercy Coll. N.Y.*, No. 22 Civ. 1985 (KMK), 2023 WL 2648827, at *7 (S.D.N.Y. Mar. 27, 2023) (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

***First***, Plaintiff could not have participated in a protected activity by complaining to TNS about "discriminatory harassment" by SD and VS as to ***himself*** because he was not subject to

discriminatory harassment under Title VI – he is not Jewish.  It was not until February 21, 2024 that Plaintiff first wrote to TNS in a way that even framed his concerns as implicating Title VI, noting that his concerns "could potentially infringe upon Title VI;" however, his concerns were based on purported discrimination by other students based on a perceived national origin, i.e., Jewish, which Plaintiff admits he is not.   Am. Compl. ¶ 99; Ex J.  But TNS always knew that Plaintiff was not part of a protected class, so his complaint of "harassment" could not have been one based in Title VI.

*Second*, the only "adverse action" Plaintiff alleges is that the investigation was "arbitrary," "biased," "inadequate," and "unjust" (*see id.* ¶ 218), which is just a recast of his hostile environment and disparate treatment claims and is insufficient.  *See Subbiah v. Univ. of Tex. at Dallas*, No. 3:10–CV–115–B, 2011 WL 1771806, at *5–6 (N.D. Tex. May 10, 2011) (holding that the allegations supporting the plaintiff's Title VI claim failed to show that the alleged discriminatory acts were made with a discriminatory motive and that the "mere fact that Plaintiff might believe these acts were taken for discriminatory or retaliatory reasons is not enough"), *aff'd sub nom.*, *Muthukumar v. Univ. of Tex. at Dallas*, 471 F. App'x 407 (5th Cir. 2012), *cert. denied*, 568 U.S. 1251 (2013).  That is particularly so where multiple administrators at TNS engaged with Plaintiff to direct him to the proper resources, and an investigation was conducted into Plaintiff's complaints in accordance with TNS' policies and procedures.[7]  Am. Compl. ¶¶ 81–86, 92, 94, 96, 99; Exs. F, L, O, P, R, V.

*Third*, there was no causal connection between Plaintiff's complaints to TNS regarding the alleged discrimination based on a perceived national origin which he does not have, and TNS'

---

[7] While Plaintiff was provided the link from which he could file a formal complaint by someone in the Student Conduct Office, the Amended Complaint does not allege that Plaintiff ever followed this process.  *See* Am. Compl. ¶¶ 61–62, 64–65; Ex. B.

responses regarding the same.  TNS could not have "retaliated" against Plaintiff by investigating the allegations against him, because that complaint *came first*.  SD and VS filed a Title IX complaint against Plaintiff, and it was only thereafter that Plaintiff began making complaints against SD and VS.  If any complaint was "retaliatory," it was Plaintiff's.  Plaintiff's own allegations in the Amended Complaint illustrate that TNS had legitimate, justifiable reasons for handling Plaintiff's complaint and SD and VS's complaint against Plaintiff, which were not linked in any way whatsoever to his perceived national origin.  *See Wang v. State Univ. of N.Y. Health Scis. Ctr. at Stony Brook*, No. 02-cv-5840, 2006 WL 3939550, at *3 (E.D.N.Y. Feb. 23, 2006) (holding that where defendant offers a legitimate, non-retaliatory reason for the adverse action, the presumption of retaliation drops from the case).  And, Plaintiff could not possibly show that there is any causal connection between how TNS handled his complaint and his Jewish identity since TNS knew he was not Jewish.  As such, Plaintiff's retaliation claim under Title VI does not rise above the level of "mere speculation" and should be dismissed.  *See Z.B. v. Irving Indep. Sch. Dist.*, No. 3:17-CV-2583-B, 2019 WL 2716504, at *4 (N.D. Tex. June 28, 2019). (denying retaliation claim under Title VI where allegations against school officials did not "rise above the level of mere speculation" or "establish a connection between [the school officials'] actions and [plaintiff's] race or national origin.").

## V.    The State Law Claims Should Also Be Dismissed.

The only basis asserted for federal jurisdiction in the Amended Complaint over the state law claims is 28 U.S.C. § 1367, presumably because Plaintiff is also a citizen of New York.  *See* Am. Compl. ¶ 11.  If the Court dismisses the federal claims, it should decline to exercise supplemental jurisdiction over the state law claims.  *Chao v. 979 Second Ave. LLC*, No. 25-cv-00778 (ALC), 2025 WL 1224191, at *4 (S.D.N.Y. Apr. 24, 2025).  Aside from this, the state law claims fail on the merits, too.

### A. Plaintiff Fails To State A Claim Under The NYSHRL, NYCRL And NYCHRL (Counts IV–XII).

Plaintiff fails to state a claim under the NYSHRL, the NYCRL and the NYCHRL for the same reasons that his Title VI claims fail. Typically, claims under the NYSHRL and federal anti-discrimination statutes have been treated as "analytically identical and addressed together." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020). Additionally, where a plaintiff has not met their burden under the NYSHRL, their NYCRL claims must also be dismissed. *See Roenick v. Flood*, No. 20 Civ. 7213 (JPC), 2021 WL 2355108, at *6 n.2 (S.D.N.Y. June 9, 2021). Plaintiff's NYSHRL and NYCRL claims fail for the same reason that their Title VI claim fails—he has not shown that TNS discriminated against him because of his national origin.

To state a claim under the NYCHRL, Plaintiff must show that they suffered a hostile environment *because* of a protected characteristic. *See Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 451 (E.D.N.Y. 2013) (emphasis added). Plaintiff must therefore plead sufficient facts to prove that "the conduct is caused at least in part by discriminatory or retaliatory motives." *Anderson v. City of New York*, 712 F.Supp.3d 412, 435 (S.D.N.Y. 2024). For the reasons stated above, even under the "less regimented approach" adopted by the NYCHRL, Plaintiff fails to provide "adequate evidence" that would support the conclusion that ***TNS*** adversely treated Plaintiff because of his perceived Jewish (or Israeli) identity where he is not Jewish. *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-cv-12137, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023).[8]

---

[8] Additionally, the NYSHRL "does not indicate that its protections extend to a perceived member of a protected class." *Romero*, 2022 WL 2079648, at *7.

### B.  Plaintiff Fails To State A Claim For Breach Of Contract (Count XIII).

Under New York law, courts will sometimes view a discipline policy as an implied contract – though it is unclear whether such a remedy is available where, as here, only an educational remedy was required, and Plaintiff was neither suspended nor expelled.  *Fraad-Wolff v. Vassar Coll.*, 932 F. Supp. 88, 91–92 (S.D.N.Y. 1996) ("virtually all of the reported cases in which a student has challenged a private university's disciplinary proceedings were brought by students who had been suspended or expelled.").  In any event, such claims are limited to situations where the school "acted arbitrarily or [failed to] substantially compl[y] with its own rules and regulations."  *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 405 (W.D.N.Y. 2017) (quoting *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 208 (W.D.N.Y. 2013)); *Fraad-Wolff*, 932 F. Supp. at 91 ("[W]hatever the legal theory underlying plaintiff's claim may be, the crucial issue is whether defendant conducted the disciplinary proceedings against plaintiff substantially in accordance with its established procedures.").  Not everything that is written in official school documents creates an "enforceable contractual obligation[]"; instead, "***courts will only enforce terms that are specific and concrete***."  *Rolph*, 271 F. Supp. at 406 (emphasis added) (citation and quotation marks omitted).  "[A]spirational" language is "not enforceable," including aspirational timelines.  *Id.* at 407; *Pierre v. Univ. of Dayton*, No. 3:15-cv-362, 2017 WL 1134510, at *6, 9 (S.D. Ohio Mar. 27, 2017) (finding that plaintiff failed to state a breach of contract claim and the university complied with its policies).  Moreover, "a student cannot maintain a breach of contract claim against a university based solely on the implied covenant of 'good faith.'" *Evans v. Columbia Univ.*, No. 14-CV-2658 (NSR), 2015 WL 1730097, at *4 (S.D.N.Y. Apr. 13, 2015) (citation omitted).

Plaintiff does not allege specific promises violated by TNS.  Rather, Paragraph 362 of the Amended Complaint copies and pastes statements from TNS' student handbook, and then alleges

that TNS "beached its express and implied contracts . . . to protect students from discrimination, harassment, and interference with their education" and further alleges that TNS "handled the grievance incompetently and unprofessionally."  Am. Compl. ¶¶ 362–65.

This is insufficient.  ***First***, allegations consisting of "'general statements of policy' or 'broad pronouncements of [a] University's compliance with existing anti-discrimination laws . . . cannot provide the basis for a breach of contract claim.'"  *Doe v. Hobart & William Smith Colls.*, 546 F. Supp.3d 250, 272 (W.D.N.Y. 2021).

***Second***, Plaintiff fails to allege facts from which to conclude that TNS failed to substantially comply with its policies and procedures.  *Doe v. Skidmore Coll.*, 152 A.D.3d 932, 935 (3d Dep't 2017) (a court reviewing a private university's disciplinary determination must determine "whether the university substantially adhered to its own published rules and guidelines for disciplinary proceedings so as to ascertain whether its actions were arbitrary or capricious").  Plaintiff fails to identity what of the myriad policy excerpts he cites actually constitutes a clear and specific promise breached by TNS.  To the contrary, he utilizes terms such as "incompetent," "unprofessional," and "haphazard" to describe TNS' administration of its grievance process and then baldly claims "breach of contract."  Am. Compl. ¶¶ 364–65.  This is insufficient.  *Ward v. New York Univ.*, No. 99 CIV. 8733(RCC), 2000 WL 1448641, at *5 (S.D.N.Y. Sept. 28, 2000) ("bald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim.").

## VI.    Plaintiff's Amended Complaint Is In Violation Of Rule 8.

Even if the Court does not dismiss the Amended Complaint with prejudice, it should require Plaintiff to replead the Amended Complaint.  Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "short and plain statement of the claims showing that the pleader is entitled to relief."  Federal Rule of Civil Procedure 8(d)(1) further requires that each allegation be

ALC

"simple, concise, and direct." "The purpose of [Rule 8] is to provide fair notice of the claims and enable the adverse party to answer the complaint and prepare for trial." *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003). Prolix complaints are unfair to the Court and the parties and put an unnecessary burden on the defendant in answering the complaint. *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 77–78 (S.D.N.Y. 2003). "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial [pursuant to Rule 12(f)] . . . or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (affirming dismissal of a complaint that "spans 15 single-spaced pages and contains . . . a surfeit of detail").

Plaintiff's Amended Complaint is 129 pages and contains 368 paragraphs, which includes photographs, excerpts of policies, and page after page that recite every detail of the interaction between Plaintiff and TNS. None of the evidence should be included in a complaint and TNS should not be burdened with filing an answer to a 368-paragraph complaint.

## **CONCLUSION**

For the reasons set forth above, TNS respectfully request that the Court dismiss Plaintiff's claims against TNS in their entirety and with prejudice.

Dated: Philadelphia, Pennsylvania
       October 10, 2025                     Respectfully submitted,


                                 TROUTMAN PEPPER LOCKE LLP

                         By:     _____
                                 Michael E. Baughman
                                 3000 Two Logan Square, Eighteenth and Arch Streets
                                 Philadelphia, PA 19103
                                 Telephone: (215) 981-4964
                                 Email: michael.baughman@troutman.com
                                 *Counsel for Defendant The New School*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October 2025, I caused a true and correct copy of the foregoing *Defendant The New School's Memorandum of Law in Support of Motion to Dismiss the Amended Complaint* to be served via CM/ECF upon all parties entitled to notice.

_____

Michael E. Baughman

26